No. 114,134

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

DEBRA K. RHODENBAUGH,
*Appellant*,

v.

KANSAS EMPLOYMENT SECURITY BOARD OF REVIEW
and MCPHERSON HOSPITAL,
*Appellees*.

SYLLABUS BY THE COURT

1.

Venue for proceedings under the Kansas Judicial Review Act (KJRA) is, with exceptions not applicable here, in the county in which the order or agency action is entered or is effective or the rule and regulation is promulgated. K.S.A. 77-609(b).

2.

Venue may be proper in more than one county under the KJRA venue statute. Accordingly, not all KJRA proceedings must be in the county in which the order is entered.

3.

By amendments to the KJRA venue statute in 1986, the Kansas Legislature indicated its intent to expand venue to include counties in which an agency action is effective.

4.

The Code of Civil Procedure may be used by the district court to supplement the KJRA if the provision is a logical necessity that is not addressed within the KJRA.

5.

When venue for a KJRA proceeding is proper in more than one county and a party moves to change venue, the district court should give due consideration to the plaintiff's right to choose the place of the action and should determine whether a transfer will serve the convenience of the parties and witnesses and the interests of justice.

6.

Although a party's right to litigate in a proper forum is a valuable one, the law does not require pointless redetermination of legal issues where, as here, the results may be readily foreseen. Accordingly, the improper transfer of venue does not necessarily warrant reversal or remand.

7.

Individuals who are unemployed because they were discharged for misconduct connected with their work are ineligible for unemployment benefits. K.S.A. 2015 Supp. 44-706(b). The employer bears the burden of proving misconduct by a preponderance of the evidence.

8.

A hospital employee whose employment is terminated for refusing to get a flu shot is discharged for misconduct connected with work where that refusal violates a company safety rule, the individual knew about the rule, the rule was lawful and reasonably related to the job, and the rule was fairly and consistently enforced.

2

Appeal from Shawnee District Court; REBECCA W. CROTTY, judge. Opinion filed April 1, 2016. Affirmed.

*Larry G. Michel* and *Karen Q. Couch*, of Kennedy, Berkley, Yarnevich, & Williamson, Chartered, of Salina, for appellant.

*Justin McFarland*, deputy general counsel, of Kansas Dept. of Labor, for appellee Kansas Employment Security Board of Review.

*Ann M.E. Parkins* and *Casey R. Law*, of Wise & Reber, L.C., of McPherson, for appellee McPherson Hospital.

Before PIERRON, P.J., BRUNS and GARDNER, JJ.

GARDNER J.:  This case asks whether a hospital employee's refusal to get a flu shot constitutes job-related misconduct precluding her receipt of unemployment benefits. The Employment Security Board of Review and the district court found it does. We agree.

PROCEDURAL BACKGROUND

McPherson Hospital (the hospital) hired Debra K. Rhodenbaugh in 2010 as an emergency department clerk. She worked at a nursing desk located in the center of the emergency department. As part of her employment, Rhodenbaugh interacted with doctors, nurses, and patients.

After Rhodenbaugh was hired, the hospital amended its policy regarding influenza vaccinations. In an effort to limit exposure and transmission of the influenza virus (flu) between the patients and the staff, the hospital changed its policy to require all employees to receive a flu vaccination. The policy expressly allowed for medical and religious exemptions but no others. On September 3, 2013, the hospital sent an email notifying all employees of the policy change and uploaded the policy in a shared folder.

3

Following that notification, the hospital offered free flu vaccinations to its employees. Approximately 95% of the employees complied. Jill Wenger, Vice President of Human Resources, mailed certified letters on October 23, 2013, to Rhodenbaugh and other employees who did not comply, informing them they needed to get the mandatory flu vaccinations or return a declination form signed by their physician or clergy. Rhodenbaugh never went to the post office to pick up that letter, but she admitted her awareness of it and of the requirement that she receive a flu vaccination.

On October 29, 2013, Rhodenbaugh provided the hospital with a note from her doctor which said: "Patient prefers to defer flu shot at this time." Wenger told Rhodenbaugh her note failed to reflect any objection on medical or religious grounds so it was insufficient to fall within the hospital's exceptions to the flu shot requirement.

Rhodenbaugh then sent a letter to the hospital explaining her decision to decline a flu vaccination, which stated:

- her aunt had passed away within 2 weeks after having received a flu vaccine;
- her grandson had had a "severe reaction to his immunizations" and suffers from seizures and permanent brain damage;
- she had experienced reactions to medications, including over the counter drugs, "beyond what one would expect";
- she believed the flu vaccine contains Thimerosal which "has been shown to potentially increase the risk of Alzheimer's Disease, brain damage and nervous system injury"; and
- her grandmother had passed away from Alzheimer's, and two of her aunts suffer from the disease.

The hospital found these reasons insufficient to meet the stated exceptions to its policy. Due to Rhodenbaugh's failure to receive the mandatory flu vaccination or

4

complete the declination form, she was terminated on October 31, 2013. Her termination is not at issue on this appeal.

Rhodenbaugh applied for and initially received unemployment benefits through the Kansas Department of Labor, but the hospital appealed. After a telephone hearing, the referee upheld the examiner's determination, finding Rhodenbaugh was qualified for benefits because she had been discharged but not for misconduct connected with her work. The hospital appealed that decision to the Kansas Employment Security Board of Review (the Board), which reversed.

Rhodenbaugh then filed a petition for review of agency action in the McPherson County District Court. The hospital moved to dismiss the petition, arguing McPherson was an improper venue. The hospital claimed venue was proper in Shawnee County because the Board was located there and the Board's order had been entered there. The district court denied the hospital's motion to dismiss but ordered the case transferred to the Shawnee County District Court.

Rhodenbaugh then filed a brief in support of her petition for judicial review in the Shawnee County District Court. After reviewing the record, the district court found:

> "The vaccination policy was fairly and consistently enforced. This is not a contested point, but requisite for a proper review of the interpretation and application of the law. The policy applied to all employees and reasonable exceptions were made for those objecting on medical or religious grounds. Employees were given ample notice and a reasonable amount of time to comply with the policy. There is nothing in the record to indicate the policy was unfair or inconsistently enforced."

Accordingly, the district court denied Rhodenbaugh's petition for judicial review. Rhodenbaugh timely appeals from that order.

5

We first address Rhodenbaugh's argument that venue was proper in the McPherson County District Court and her case was improperly transferred to the Shawnee County District Court.

Rhodenbaugh's appeal for judicial review of the agency's action is governed by the Kansas Judicial Review Act (KJRA), K.S.A. 77-601 *et seq.* See *Ryser v. State*, 295 Kan. 452, 458, 284 P.3d 337 (2012). This Act specifically addresses venue in providing:

> "Except as otherwise provided by K.S.A. 8-259, 31-144, 44-556, 72-5430a and 74-2426, and amendments thereto, venue is in the county in which the order or agency action is entered or is effective or the rule and regulation is promulgated." K.S.A. 77-609(b).

Because the statute states the proper venue for this proceeding, the question presents a matter of statutory interpretation which is a question of law subject to unlimited review. *Kansas Dept. of Revenue v. Powell*, 290 Kan. 564, 567, 232 P.3d 856 (2010).

Neither party asserts that any statutory exception listed in this venue statute applies. We agree. See K.S.A. 2015 Supp. 8-259 (drivers' licenses); K.S.A. 2015 Supp. 31-144 (fire safety and prevention); K.S.A. 2015 Supp.44-556 (workers compensation); K.S.A. 2015 Supp. 72-5430a (teachers' contracts); and K.S.A. 2015 Supp. 74-2426 (tax appeals).

Thus venue is governed by the general provision that venue is proper "in the county in which the order or agency action is entered or is effective or the rule and regulation is promulgated." K.S.A. 77-609(b). The McPherson County District Court found this language to be ambiguous. It found Rhodenbaugh had filed the action in good

faith but ruled that the case should be transferred to Shawnee County District Court rather than dismissed, as the hospital had requested.

Because K.S.A. 77-609(b) provides that venue is proper in the county in which the order is entered, and the Board's order was entered in Shawnee County, Shawnee County was a proper venue. But Rhodenbaugh contends that venue was also proper in McPherson County because the agency action or order "is effective" in that county where she resides and would receive and use her unemployment benefits.

We find support for Rhodenbaugh's interpretation in the legislative history of this venue statute. The statute originally provided that venue was generally proper "in the county in which the order is entered or the rule and regulation is promulgated." L. 1984, ch. 338, Sec. 9. That narrow provision was interpreted to be pro-agency and favored venue in the Shawnee County District Court. Professor David Ryan, a member of the committee that advised the Kansas Legislature during its adoption of the KJRA, see *Kingsley v. Kansas Dept. of Revenue*, 288 Kan. 390, 398, 204 P.3d 562 (2009), analyzed venue under the KJRA shortly after its enactment:

> "Venue was one of the tougher issues in the course of the legislative promulgation of the KJRA. The Judicial Council recommended several alternative venues, but it may be noted a number of state agencies voiced their concern about traveling outside Topeka. In the resulting controversy over whether to grant a broad or narrow venue for administrative appeals, the proposed Act went for many weeks without any venue provision at all between the House and Senate versions, until it was finally resolved. In its final format, venue is quite simple and pro-agency: being the 'county in which the order is entered or the rule or regulation is promulgated.' This will far more often than not be the Shawnee County District Court in Topeka." Ryan, *The New Kansas Administrative Procedure and Judicial Review Acts,* 54 J.K.B.A. 53, 65 (1985).

But the following year, the legislature broadened the venue statute by adding the language at issue in this case, which we have italicized below:

7

"[V]enue is in the county in which the order *or agency action* is entered *or is effective* or the rule and regulation is promulgated." L. 1986, ch. 318, Sec 4.

This change requires this court to determine the legislative meaning and intent of the amendment.

"The legislative history surrounding the 1986 amendment is not very enlightening. The Senate Judiciary Committee minutes accompanying the proposed change do not state the purpose behind the amendment other than that the amendments to the Act were merely 'technical' in nature." *Karns v. Kansas Bd. of Agriculture*, 22 Kan. App. 2d 739, 742, 923 P.2d 78 (1996).

Under this and other statutes, venue may be proper in more than one county. See *Alliance Life Ins. Co. v. Ulysses Volunteer Fireman's Relief Assn.*, 215 Kan. 937, 942, 529 P.2d 171 (1974). "When construing a statute, a court should give words in common usage their natural and ordinary meaning." *Bank IV Wichita v. Plein*, 250 Kan. 701, 705-06, 830 P.2d 29 (1992). "When the legislature revises an existing law, it is presumed that the legislature intended to change the law as it existed prior to the amendment." *Hughes v. Inland Container Corp.*, 247 Kan. 407, 414, 799 P.2d 1011 (1990). It is a cardinal rule of statutory construction that a provision should not be interpreted as to render some language mere surplusage. See *Northern Natural Gas Co. v. ONEOK Field Services Co.*, 296 Kan. 906, 918, 296 P.3d 1106 (2013).

Given the plain language of the statute, coupled with its legislative history, we cannot construe the KJRA venue statute to require the Shawnee County District Court to review all petitions from the Kansas Employment Security Board of Review and other administrative agencies located in Topeka. See *Karns*, 22 Kan. App. 2d at 742. Interpreting venue to lie only in the county where an administrative order is issued and not in any county where the effects of the order are felt, is overly narrow and would have the practical effect of placing venue in Shawnee County for all administrative appeals. If such were the case, then the legislature could have explicitly placed venue in the

8

Shawnee County District Court in enacting the KJRA. Instead, the legislature amended the statute in 1986 to avoid that possible interpretation. We decline to read "effective" as mere surplusage. Accordingly, we find the 1986 amendment was intended to expand venue to include counties in which agency orders are effective.

We next determine whether the Board's order was effective in McPherson County, as Rhodenbaugh contends. Although the Board's order was entered in Shawnee County, Rhodenbaugh contends the agency action is effective in McPherson County because she lives there and, if successful, would have received payment of unemployment benefits there, apparently through the mail.

In *Mildfelt v. State*, 11 Kan. App. 2d 617, 731 P.2d 884 (1987), a petition for judicial review of SRS's denial of food stamps and medical assistance was brought in Shawnee County. The pre-1986 venue statute governed the case, but we found under the facts of the case that the same result would have occurred under the post-1986 version of the statute. 11 Kan. App. 2d at 618. We found venue was proper only in Sedgwick County because Mildfelt had applied for food stamps and medical assistance there, her original application had been denied there, and the effects of the decision were "wholly within" Sedgwick County. 11 Kan. App. 2d at 620. We found the decision "effective" in Sedgwick County because the food stamps would have been issued and used in Sedgwick County and the medical assistance, had it been granted, would have been rendered in Sedgwick County. 11 Kan. App. 2d at 620.

The facts of this case are not as compelling as those in *Mildfelt.* Here, venue was clearly proper in Shawnee County because the Board's order was entered there, and the Board's decision, if favorable to the plaintiff, would be effective in McPherson County only because Rhodenbaugh lived there and would receive her unemployment benefits there. We find these facts sufficient, although minimally so, to show that the Board's order or action was effective in McPherson County.

9

That conclusion, although supported by scant facts, is fortified by a rule of law. Where venue for a KJRA proceeding is proper in more than one county, the district court should give due consideration to the plaintiff's right to choose the place of the action. See K.S.A. 60-609(a) (allowing the trial court to change venue upon the motion of a party and "a finding that a transfer would better serve the convenience of the parties and witnesses and the interests of justice"); *Pieren-Abbott v. Kansas Dept. of Revenue*, 279 Kan. 83, 97, 106 P.3d 492 (2005) (holding "the Code of Civil Procedure may be used by the district court to supplement the KJRA if the provision is a logical necessity that is not addressed within the KJRA"); *cf. Gonzales*, *Administrator v. Atchison*, *T. & S. F. Rly. Co*., 189 Kan. 689, 691-93, 371 P.2d 193 (1962) (finding "'unless the balance is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed'" under the principle of *forum non conveniens*). The district court's ruling in this case does not reflect that it gave any consideration to the plaintiff's right to choose among two proper venues.

We find that the facts of this case, the legislative history of this statute, and proper deference to the plaintiff's choice of forum compel the conclusion that venue was proper in McPherson County, as well as in Shawnee County. Accordingly, the district court should not have transferred venue without having given weight to the plaintiff's choice of venue and without having found that a transfer would serve the convenience of the parties and witnesses and the interests of justice.

*Harmless error*

The party benefiting from an erroneous change of venue has the burden to come forward with a showing of harmlessness. *Kansas City Mall Assocs. v. Unified Gov't of Wyandotte County/KCK*, 294 Kan. 1, 8, 272 P.3d 600 (2012). Here, McPherson Hospital has undertaken that burden and has met it.

10

We are persuaded by the Supreme Court's approach in *Alliance Life Ins.*, 215 Kan. 937. There, the Supreme Court held the district court erred by failing to transfer the matter to the county of proper venue but nonetheless addressed the merits, reasoning that a remand would in all probability be futile:

"Had this case been decided after a trial, requiring the weighing of evidence to resolve disputed facts, the holding just announced might well receive a reversal with directions to transfer the case to Grant county for a new trial. The decision, however, was made as a matter of law, based on stipulations as to facts, testimony, and—perhaps most important—the unavailability of testimony. As will be developed, it appears that a remand and transfer to Grant county would in all probability bring us the case again on a record identical with this one, at least insofar as the merits are concerned. Although a party's right to litigate in a proper forum is a valuable one, the law does not require pointless redetermination of legal issues where the results may be readily foreseen. [Citation omitted.] For this reason, and because the parties urge us to do so, we proceed to the merits." 215 Kan. at 942.

Our case, although not decided on stipulated facts, presents solely a question of law on established facts. The parties submitted the matter to the Shawnee County District Court on the briefs, based on the existing case record. Neither party requested a hearing, oral argument, or a trial. And the remaining issue on appeal presents solely a question of law—whether Rhodenbaugh's refusal to receive the flu vaccine constitutes statutory misconduct as provided in K.S.A. 2015 Supp. 44-706(b). If we remand this case to the McPherson County District Court, the only difference would be which judge would review the agency action, but Rhodenbaugh has not alleged that the Shawnee County judge who decided her petition for judicial review was biased or otherwise unfair. Neither party contends that the outcome of this matter may have been different had it been heard in McPherson County. Accordingly, to remand for a transfer of venue would be futile, as the parties agree. Therefore, we address this appeal on its merits.

11

This action is brought as a judicial review of an agency action under the Kansas Judicial Review Act (KJRA), K.S.A. 77-601 *et seq*. The KJRA defines the scope of judicial review of state agency actions. K.S.A. 2015 Supp. 77-603(a); *Ryser*, 295 Kan. at 458. Parties in an agency action before the district court under the KJRA may appeal the district court's decision to the appellate courts, just as parties do in other civil cases. K.S.A. 77-623. Appellate courts exercise the same statutorily limited review of the agency's action as does the district court, as though Rhodenbaugh's petition had been made directly to the appellate court. *Powell*, 290 Kan. at 567. On appeal, the burden of proving the invalidity of the agency action rests on the party asserting such invalidity. K.S.A. 2015 Supp. 77-621(a)(1); *Milano's*, *Inc. v. Kansas Dept. of Labor*, 296 Kan. 497, 500, 293 P.3d 707 (2013). Here, that party is Rhodenbaugh.

The KJRA outlines eight scenarios under which relief may be granted. K.S.A. 2015 Supp. 77-621(c). The sole basis alleged here is that the Board erroneously interpreted or applied the law. K.S.A. 2015 Supp. 77-621(c)(4). Rhodenbaugh argues the Board and the district court erroneously interpreted and applied the law pertaining to unemployment benefits, which are contained in K.S.A. 44-701 *et seq*., and that she is entitled to receive unemployment benefits under K.S.A. 2014 Supp. 44-706(b).

Individuals who are unemployed because they were discharged for misconduct connected with their work are ineligible for unemployment benefits. K.S.A. 2015 Supp. 44-706(b). The employer bears the burden of proving misconduct by a preponderance of the evidence. *Farmland Foods, Inc. v. Abendroth*, 225 Kan. 742, 743-44, 594 P.2d 184 (1979) (relying on K.S.A. 1978 Supp. 44-706(b), which also provided an individual was disqualified for benefits if "'he or she ha[d] been discharged for breach of a duty connected with his or her work reasonably owed an employer by an employee'"). Under

12

this standard, the evidence must demonstrate "'a fact is more probably true than not true.' [Citation omitted.]" *Gannon v. State*, 298 Kan. 1107, 1124, 319 P.3d 1196 (2014).

Specifically, the relevant statute provides:

"An individual shall be disqualified for benefits:

. . . .

"(b) If the individual has been discharged or suspended for misconduct connected with the individual's work. . . .

(1) For the purposes of this subsection, 'misconduct' is defined as a violation of a duty or obligation reasonably owed the employer as a condition of employment including, but not limited to, a violation of a company rule, including a safety rule, if: (A) The individual knew or should have known about the rule; (B) the rule was lawful and reasonably related to the job; and (C) the rule was fairly and consistently enforced." K.S.A. 2015 Supp. 44-706.

Rhodenbaugh argues her refusal to receive the flu vaccine did not constitute statutory misconduct. She contends she owed no duty to the hospital because receiving a flu vaccination "cannot be a duty if there are exceptions to the rule." She also argues that even if the hospital had a legal right to terminate her employment, it did not have the right to deny her unemployment benefits because her refusal to get a flu vaccination was for good reason and did not constitute statutory misconduct. She believes the Board conflated these two issues. We address these claims below in examining the statutory definition of "misconduct" in K.S.A. 2015 Supp. 44-706(b)(1).

Under the KJRA, we must determine whether an agency's factual findings are supported by substantial evidence when considered in light of all evidence of record. See K.S.A. 2015 Supp. 77-621(c)(7), (d); *Sierra Club v. Moser*, 298 Kan. 22, 62-63, 310 P.3d

13

360 (2013). This analysis requires us to: (1) review evidence both supporting and detracting from an agency's findings; (2) examine the presiding officer's credibility determinations, if any; and (3) review the agency's explanation as to why the evidence supports its findings. K.S.A. 2015 Supp. 77-621(d); *Williams v. Petromark Drilling*, 299 Kan. 792, 795, 326 P.3d 1057 (2014). Substantial evidence is such legal and relevant evidence as a reasonable person might accept as being sufficient to support a conclusion. *Gannon*, 298 Kan. at 1175. In reviewing the evidence, we do not reweigh the evidence or engage in de novo review. K.S.A. 2015 Supp. 77-621(d).

*Hospital safety rule*

We first examine whether the hospital's policy change was a company rule, or more specifically here, a safety rule. See K.S.A. 2015 Supp. 44-706(b)(1).

The district court found: "It is uncontested that the newly implemented policy is a company rule, and a safety one at that." On appeal, Rhodenbaugh does not dispute that the flu vaccination policy was a safety rule. Furthermore, at the telephone hearing, Dr. Samuel Claassen, a staff physician in internal medicine at McPherson Hospital, testified that the flu vaccine is 60 to 70 percent effective and it was reasonable for the hospital to require flu vaccinations to lessen the risk of exposing the staff and patients to the flu. He also testified that the benefits of receiving the flu vaccine outweighed the risks. Additionally, Wenger testified the mandatory flu vaccination policy was implemented to protect the health and safety of the patients and the hospital employees. Nothing in the record suggests that the newly implemented rule was something other than a company safety rule. Accordingly, the district court did not err in this finding.

*Employee's awareness of rule*

We next ask whether Rhodenbaugh knew or should have known about the rule, as required by K.S.A. 2015 Supp. 44-706(b)(1)(A).

Rhodenbaugh received the email dated September 3, 2013, notifying the employees of the policy change, and the new policy was uploaded in the hospital's shared folder. She further testified she had access to the hospital's shared drive. Rhodenbaugh also testified her supervisor had informed her the flu vaccination was mandatory and failure to receive one would result in termination. After she refused to receive a flu vaccination, she was notified via certified mail on October 23, 2013, that she still needed to get the mandatory flu vaccine or have a declination signed by a physician or clergy. Rhodenbaugh testified she was aware of that letter and its contents. Thus, Rhodenbaugh knew about the rule.

*Lawfulness of rule and rule's relation to job*

We next ask whether the hospital's implementation of the flu vaccination policy was lawful and related to the job. See K.S.A. 2015 Supp. 44-706(b)(1)(B).

The district court found: "The rule is also lawful because there is nothing in Kansas or Federal law that prevents the Hospital from requiring vaccinations. It is a legal policy to implement, and provides for exceptions that are nearly identical to Kansas' exceptions to vaccinations for schoolchildren. See K.S.A. 72-5209(b)." Rhodenbaugh does not challenge this finding, and upon further research, nothing indicates this is an incorrect finding. Therefore, we find the subsection was satisfied—the policy change was lawful and reasonably related to the job.

15

*Fair and consistent enforcement of rule*

Lastly, we determine whether the challenged rule was fairly and consistently enforced, as is required under K.S.A. 2015 Supp. 44-706(b)(1)(C).

Rhodenbaugh argues: "[T]aking a flu shot cannot be a duty if there are exceptions to the rule and employees subject to the exception merely have to wear a mask." At oral argument, Rhodenbaugh seemed to contend that because she was willing to wear a mask and had good reasons for not wanting a flu shot, the hospital should have granted her a de facto exception to the rule.

Rhodenbaugh fails to cite any authority for this claim, and her argument has no logical appeal. See *Friedman v. Kansas State Bd. of Healing Arts*, 296 Kan. 636, 645, 294 P.3d 287 (2013) (finding a point raised incidentally in a brief and not argued therein is deemed abandoned). Whether the hospital should have included a "catch-all" exception to its policy to include persons such as Rhodenbaugh is a policy matter best left to the employer. *Cf. Simms v. Oklahoma ex. rel. Dept. of Mental Health*, 165 F.3d 1321, 1330 (10th Cir.), *cert. denied* 528 U.S. 815 (1999) (Courts do not sit as "'super personnel department[s]'" free to second-guess the business judgment of an employer). Nothing in the record indicates the hospital failed to fairly and consistently enforce its general rule requiring a flu shot or the stated exceptions to that rule. Accordingly, the hospital has shown that the requirements for statutory misconduct are met.

CONCLUSION

Having reviewed the facts of record, we find the hospital met its burden of proving by a preponderance of the evidence "misconduct" as defined by K.S.A. 2015 Supp. 44-706(b)(1) and that Rhodenbaugh has not met her burden of proving the invalidity of the agency action. Rhodenbaugh owed a duty to the hospital to follow the safety rule by

16

either receiving the flu vaccine or meeting the applicable exemptions. Her failure to comply with the rule met the statutory definition of job-related misconduct and thus disqualified her for unemployment benefits.

Affirmed.