No. 117,750

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

CARLSON AUCTION SERVICE, INC.,
*Appellee*,

v.

KANSAS CORPORATION COMMISSION,
*Appellant*.

SYLLABUS BY THE COURT

1.

The scope of judicial review of a state administrative agency action is defined by the Kansas Judicial Review Act (KJRA), K.S.A. 77-601 et seq. The party asserting the invalidity of an agency's action bears the burden of proving invalidity.

2.

Interpretation of a statute or an administrative regulation is a question of law over which appellate courts have unlimited review.

3.

Under K.S.A. 2016 Supp. 66-1,108b, the Kansas Corporation Commission has power, authority, and jurisdiction to supervise and control motor carriers, including a private motor carrier. A private motor carrier must obtain a license or permit from the Kansas Corporation Commission or be registered pursuant to federal statutes to operate as a carrier of property or passengers within Kansas.

4.

A private motor carrier is a person who provides transportation of property or passengers by commercial motor vehicle, and a commercial motor vehicle is any self-propelled or towed motor vehicle used on a highway in interstate commerce to transport passengers or property when the vehicle meets a certain weight requirement.

5.

A seller, such as Carlson Auction Service, Inc., is not acting as a private motor carrier by driving a vehicle for delivery to its purchaser and under those circumstances is not under the jurisdiction of the Kansas Corporation Commission.

Appeal from Shawnee District Court; EVELYN Z. WILSON, judge. Opinion filed February 16, 2018. Affirmed.

*Brian G. Fedotin*, deputy general counsel and chief appellate counsel, Kansas Corporation Commission, for appellant.

*L.N. Collier*, of Topeka, for appellee.

Before LEBEN, P.J., HILL, J., and WALKER, S.J.

WALKER, J.:  The Kansas Corporation Commission (Commission) appeals from the district court's decision reversing the Commission's decision to impose a fine on Carlson Auction Service, Inc. (Carlson), for failing to register and pay Unified Carrier Registration Act (UCR) fees when it employed a driver to drive an empty tow truck from Carlson's auction house in Topeka to the purchaser in Missouri. On appeal, we hold that Carlson was not a private motor carrier operating as a carrier of property or passengers without a license or permit to do so and affirm the district court's reversal of the fine.

2

FACTS

On December 1, 2015, Kansas Highway Patrol Motor Carrier Inspector Officer Mandee Gieber was inspecting and weighing a truck at the rest stop on I-70 in Kansas between Topeka and Lawrence when a citizen notified her that the citizen had seen a white Isuzu tow truck that had the driver's door partially open, held shut with a bungee strap. After finishing the inspection she was performing, Officer Gieber located the 1989 Isuzu truck, which she could tell was over 10,000 gross vehicle weight rating (GVWR). She saw the bungee strap hanging out of the driver's door, which was open, as reported by the citizen.

Officer Gieber spoke to the driver of the Isuzu, who said he was simply driving the truck for I-70 Auto Auction from Topeka to Kansas City, Missouri, to deliver it to Crosby Auction, which had purchased the truck. Officer Gieber informed the driver that she was going to do an inspection of the vehicle. She performed a level II inspection. When she ran the dealer's tag that was on the vehicle, it returned to Carlson Auction Service, Inc., of Topeka. She could not find any USDOT number in the database for Carlson. She called the phone number for Carlson Auction and spoke to someone who said that the company did not have a USDOT number nor did it need one because it did not have a load on the truck. During the inspection, Officer Gieber noted 11 violations of motor carrier safety rules and regulations, 1 of which was failure to pay UCR fees.

Three days later the Commission sent Carlson a notice of violation of failure to register and pay UCR fees pursuant to 49 C.F.R. § 392.2 (2016). Carlson was assessed a $300 fine for failure to register and pay the UCR fees. Carlson sent an e-mail initiating a formal challenge of the notice of violation. In response, Captain Christopher J. Turner of the Kansas Highway Patrol wrote a letter to Carlson informing it that its challenge had been denied. Carlson requested a hearing with the Commission to further challenge the violation.

The Commission subsequently held an evidentiary hearing on Carlson's challenge. Officer Gieber and Gary Davenport, the Deputy Director of the Transportation Division of the Commission, testified on behalf of the Commission. The Commission staff had presented the prefiled testimony of both of these witnesses. Daniel Carlson, Carlson's president and general manager, testified on his company's behalf. During his testimony, he presented two documents: an invoice or bill of sale showing the Isuzu truck as being sold at auction on November 23, 2015, and a copy of the title for the Isuzu truck. He also explained that since his company's inception, it had been Carlson Auction Service, Inc. d/b/a I-70 Auto Auction.

Following the hearing, the Commission issued an order denying Carlson's appeal. It determined that Carlson was required to pay the UCR fees and therefore Carlson violated K.S.A. 2015 Supp. 66-1,115 by not paying the fees. The Commission upheld the $300 civil fine assessed against Carlson for its failure to pay the fees on the Isuzu truck. The Commission determined that since Carlson's employee was operating the vehicle with the intent of traveling interstate and the vehicle met the weight requirements to be classified as a commercial motor vehicle (CMV) under 49 C.F.R. § 390.5 (2017), Carlson was required to pay the UCR fees. The Commission upheld the $300 civil penalty under K.S.A. 2015 Supp. 66-1,142b(a).

Carlson subsequently filed a motion for reconsideration, arguing among other things that it was not a licensee of the Commission and therefore the Commission lacked jurisdiction over it. Counsel for the Commission filed a response to Carlson's motion for reconsideration.

After considering the motion, the Commission filed an order denying Carlson relief. The Commission rejected Carlson's argument that it was not a licensee of the Commission and that the Commission lacked jurisdiction over it, citing its broad

4

authority and jurisdiction over motor carriers operating in the state and finding that Carlson failed to support its position with any legal authority.

After receiving the final Commission order, Carlson filed a petition for review in Shawnee County District Court, in which it asked the district court to set aside the Commission's order that Carlson was a motor carrier subject to the Commission's jurisdiction. The Commission filed an answer to Carlson's petition for judicial review, and thereafter both parties briefed the issues for the district court.

In its memorandum decision and order, the district court determined that the property being delivered by Carlson was the vehicle, and therefore it could not be the property that was transported by the vehicle, which the court found was necessary to require a UCR license. The district court granted Carlson's petition for review and found that the Commission did not have jurisdiction over Carlson because Carlson was not required to obtain a UCR license. The court determined that Carlson's action of delivering the tow truck did not meet the definition of "private motor carrier" and therefore Carlson was not a motor carrier under K.S.A. 2015 Supp. 66-1,108(f). Thus, the district court determined that the Commission did not have jurisdiction over Carlson under K.S.A. 2015 Supp. 66-1,108b.

The Commission timely filed a notice of appeal.

ANALYSIS

On appeal, the Commission's actions are reviewable under the Kansas Judicial Review Act (KJRA), which defines the proper scope of review. See K.S.A. 2016 Supp. 77-603; *Midwest Crane & Rigging, LLC v. Kansas Corporation Comm'n*, 306 Kan. 845, 848, 397 P.3d 1205 (2017). The scope of judicial review of a state administrative agency action is defined by the KJRA. K.S.A. 2016 Supp. 77-603(a); *Ryser v. Kansas Bd. of*

*Healing Arts*, 295 Kan. 452, 458, 284 P.3d 337 (2012). Any party to an agency action may appeal from the district court's decision on the agency action by filing a petition for review, just as parties may in other civil cases. K.S.A. 77-623. Under the KJRA, appellate courts exercise the same statutorily limited review of the agency's action as the district court. *Bd. of Cherokee County Comm'rs v. Kansas Racing & Gaming Comm'n*, 306 Kan. 298, 318, 393 P.3d 601 (2017).

The Commission argues that it is entitled to relief under K.S.A. 2016 Supp. 77-621(c)(4), which provides that a court can grant relief if the agency erroneously interpreted or applied the law. In this case, the Commission is arguing that it did not erroneously interpret or apply the law, as found by the district court. Additionally, the KJRA states that the party asserting the invalidity of an agency's action bears the burden of proving it. K.S.A. 2016 Supp. 77-621(a)(1); *Golden Rule Ins. Co. v. Tomlinson*, 300 Kan. 944, 953, 335 P.3d 1178 (2014). Thus, even on review of the district court's reversal of the agency action, Carlson still has the burden to prove the invalidity of the agency action.

Resolution of this issue requires interpretation of statutes or administrative regulations, which is a question of law over which appellate courts have unlimited review. See *In re Tax Appeal of LaFarge Midwest*, 293 Kan. 1039, 1043, 271 P.3d 732 (2012). Appellate courts do not defer to the agency's interpretation of a statute. See *Douglas v. Ad Astra Information Systems*, 296 Kan. 552, 559, 293 P.3d 723 (2013). When a statute is clear and unambiguous, appellate courts give effect to legislative intent expressed through the words of the statute, rather than make a determination of what the law should or should not be. *Ullery v. Othick*, 304 Kan. 405, 409, 372 P.3d 1135 (2016).

The Commission determined that Carlson violated K.S.A. 2016 Supp. 66-1,115, which states:

"It shall be unlawful for any private motor carrier to operate as a carrier of property or passengers within this state either in intrastate commerce or in interstate commerce without first having obtained from the commission a license or permit or without being registered pursuant to federal statutes. An application shall be made to the commission in writing stating such information as the commission may request. Upon receipt of such information and on compliance with the rules and regulations and payment of fees, the commission shall issue a license or permit to such applicant."

K.S.A. 2016 Supp. 66-1,109 states that vehicles with dealer license plates are not subject to the Commission's registration requirements. Specifically, the statute states:

"This act shall not require the following carriers to obtain a certificate, license or permit from the commission or file rates, tariffs, annual reports or provide proof of insurance with the commission:

. . . .

(q) a vehicle being operated with a dealer license plate issued under K.S.A. 8-2406, and amendments thereto, and in compliance with K.S.A. 8-136, and amendments thereto, and vehicles being operated with a full-privilege license plate issued under K.S.A. 8-2425, and amendments thereto." K.S.A. 2016 Supp. 66-1,109.

This exemption makes sense because a person who was only selling a vehicle would not be a person transporting property or passengers by commercial motor vehicle, so it should not have to secure a license or permit under K.S.A. 2016 Supp. 66-1,115. Officer Gieber initially testified that the tow truck had dealer tags, but she later testified, "The vehicle had driveaway tags which, when travelling interstate, are subject to UCR." Driveaway tags apparently mean tags under K.S.A. 2016 Supp. 8-143(b)(4), which are not specifically exempt under K.S.A. 2016 Supp. 66-1,109(q). However, K.S.A. 2016 Supp. 8-143(b)(4) states that

"[a] transporter delivering vehicles not the transporter's own by the driveaway method where such vehicles are being driven, towed, or transported singly, or by the

7

saddlemount, towbar, or fullmount methods, or by any lawful combination thereof, may apply for license plates which may be transferred from one such vehicle or combination to another for each delivery *without further registration*." (Emphasis added.)

Based on this language, it is possible that Carlson's driveaway license was sufficient, and it did not need further registration beyond that license. However, neither party makes this argument.

Nevertheless, it appears to us that the district court correctly determined that Carlson did not meet the definition of a motor carrier under K.S.A. 2016 Supp. 66-1,108(f) and was not subject to the authority and jurisdiction of the Commission under K.S.A. 2016 Supp. 66-1,108b. Specifically, we find that Carlson has met its burden of showing that it was not required by K.S.A. 2016 Supp. 66-1,115 to obtain a license or permit or to register under federal statutes because it is not a private motor carrier operating as a carrier of property or passengers.

K.S.A. 2016 Supp. 66-1,108b states that the Commission has power, authority, and jurisdiction to supervise and control "motor carriers." At the time Carlson's employee was delivering the tow truck at issue in this case, K.S.A. 2016 Supp. 66-1,108(f) defined "motor carrier" as "a for hire motor carrier or a private motor carrier." The statute did not define "for hire motor carrier," but K.S.A. 2016 Supp. 66-1,108(i) states: "'[P]rivate motor carrier' means a person who provides transportation of property or passengers, by commercial motor vehicle and is not a for hire motor carrier." The actual statute for which the Commission fined Carlson—K.S.A. 2016 Supp. 66-1,115—likewise only applies to a private motor carrier. Moreover, commercial motor vehicle is defined as "any self-propelled or towed motor vehicle used on a highway in interstate commerce to transport passengers or property when the vehicle—(1) Has a gross vehicle weight . . . of 4,536 kg (10,001 pounds) or more . . . ." 49 C.F.R. § 390.5; see K.A.R. 82-4-3f(a)(2)(C) (specifically adopting the previous definition).

8

In passing, we note that K.S.A. 66-1,108 was amended by our Legislature, effective July 1, 2017, and it no longer includes a definition of private motor carrier. However, we must utilize the version of that statute which was in effect at the time of the alleged violation.

It is clear to us that Carlson was not a private motor carrier under K.S.A. 2016 Supp. 66-1,108 because there was no evidence presented at the hearings that Carlson provided transportation of property or passengers by commercial motor vehicle. The evidence presented was that Carlson was merely delivering a vehicle to its purchaser.

The Commission argues that interpreting the statutes not to apply in the current case leads to an absurd result. According to the Commission, under the district court's interpretation of the statutes, Carlson would have been subject to regulation by the Commission if it had used another truck to deliver the tow truck with the faulty door purchased at the auction. But it was not subject to regulation when it drove the actual tow truck with a faulty door. The Commission claims that the auction company, therefore, evaded the Commission's jurisdiction by endangering public safety.

Nevertheless, the ultimate and controlling question in this case is whether Carlson violated K.S.A. 2016 Supp. 66-1,115 by not obtaining a license, and under a plain reading of the applicable statutes, it did not. The Commission's concern about danger to public safety may be well-founded, but it is irrelevant to the critical issue in this case. It is certainly possible that by driving the tow truck with a faulty door, Carlson violated some other safety regulation. But it did not violate K.S.A. 2016 Supp. 66-1,115.

Carlson argues that this issue was decided in its favor by the Kansas Supreme Court in *Midwest Crane & Rigging, LLC*, 306 Kan. 845, which was handed down by the court after the Commission filed its appellate brief. The issue in *Midwest Crane & Rigging, LLC* was whether a truck with a crane permanently attached to it qualified as a

9

commercial motor vehicle subject to registration and fee payment under the federal UCR. See 49 U.S.C. § 14504a (2012). The court determined that the answer depended on whether the crane and associated tools qualified as "cargo," as defined in the federal regulation's definition of commercial motor vehicle at 49 U.S.C. § 31101(1) (2012). Ultimately, the court held that the crane and associated tools were not cargo, and therefore the crane truck was not a commercial motor vehicle subject to the registration and fee requirements. 306 Kan. at 853.

Carlson maintains that the reasoning in *Midwest Crane & Rigging, LLC* applies in this case to support a finding that Carlson was not transporting goods or services making it liable for registration. The Commission filed a reply brief to address the effect of the Kansas Supreme Court's decision in *Midwest Crane & Rigging, LLC* on this court's decision. The Commission first argues that the district court's decision must be incorrect because it relied on the Kansas Court of Appeals' decision in *Midwest Crane & Rigging, LLC v. Kansas Corporation Comm'n*, No. 114,168, 2016 WL 4161384 (Kan. App. 2016) (unpublished opinion), which the Kansas Supreme Court reversed. But both courts found that the issue of whether Midwest Crane had to pay the UCR fee depended on whether the crane was part of the truck or if it was property being transported by the truck. Therefore, either way it came out, both courts agreed that the company had to be transporting something by truck to be subject to the registration and fee requirements.

The Commission also argues that *Midwest Crane & Rigging, LLC* is distinguishable because it dealt with federal statutes instead of state statutes and did not actually interpret K.S.A. 2016 Supp. 66-1,108(i). However, despite the fact that the term "cargo" does not appear in the Kansas statutes at issue in this case, Kansas has adopted 49 C.F.R. 390.13 (2016) in K.S.A. 2016 Supp. 66-1,129 and K.A.R. 82-4-3f. See *Bartlett Grain Co. v. Kansas Corporation Comm'n*, 292 Kan. 723, 724, 256 P.3d 867 (2011). And the definition of commercial motor vehicle that was explicitly adopted by K.A.R. 82-4-

3f(a)(2)(C) states that a commercial motor vehicle is a vehicle that is used to transport passengers or property.

Finally, the Commission argues that in analyzing whether Carlson was acting as a private motor carrier, we should find that the empty tow truck was the property being transported by the commercial motor vehicle—the tow truck itself. In doing so, the Commission believes that we should consider the question and answer from the federal government's website providing guidance for interpreting the federal regulations. According to the Commission, the following question and guidance answer supports its position that Carlson should have been registered as a private motor carrier:

"Question 6:  Is transporting an empty CMV across State lines for purposes of repair and maintenance considered interstate commerce?
"Guidance:  Yes. The [Federal Motor Carrier Safety Administration rules and regulations] are applicable to drivers and CMVs in interstate commerce which transport property. The property in this situation is the empty CMV."

However, as pointed out by the Commission itself in arguing that the *Midwest Crane & Rigging, LLC* holding does not apply to the analysis in this case, the Commission did not fine Carlson under the federal statutes. Instead, it fined Carlson under K.S.A. 2016 Supp. 66-1,115 and its power and authority under K.S.A. 2016 Supp. 66-1,108b. Neither of these statutes includes a registration requirement for a commercial motor vehicle, which is what this question addresses. Instead, it requires registration for a private motor carrier, which uses commercial motor vehicles to provide transportation of property or passengers. And if the Commission wanted to analyze whether the tow truck was a "commercial motor vehicle," then it likely would not be considered one under the *Midwest Crane & Rigging, LLC* reasoning, since there was no evidence that the vehicle was used by Carlson to transport cargo. The only evidence in this case was that Carlson drove the empty vehicle to its purchaser. Thus, even if it was necessary to prove that the tow truck was a commercial motor vehicle, the Commission has not provided authority

11

supporting its position that the present situation met the definition of commercial motor vehicle.

Moreover, we were unable to locate this question and answer at the citation given in the Commission's brief. The closest thing on the current version of the website is the following:

> **"Question 13: A motor carrier dispatches an empty CMV from State A into adjoining State B in order to transport cargo or passengers between two points in State B, and then to return empty to State A. Does the transportation of cargo or passengers within State B constitute interstate commerce?**
>
> "Guidance: Yes. The courts and the ICC developed a test that clarifies the legal status of intrastate portions of interstate trips. The character of the intrastate leg depends on the shipper's fixed and persistent intent when the transportation began. The fixed and persistent intent in this case was to move property—the vehicle itself—across State lines and between two points in State B where it was used to haul cargo or passengers. The transportation within State B, therefore, constitutes interstate commerce. In some cases the motor carrier may be the shipper." Federal Motor Carrier Safety Administration, https://www.fmcsa.dot.gov/regulations/title49/section/390.3 (last visited Feb. 8, 2018).

But this language also does not support the Commission's position. Although both of these guidance questions and answers talk about empty commercial motor vehicles, they do not state that a driver of an empty commercial vehicle is always subject to regulation. It appears that a driver only would be subject to regulation if the vehicle regularly is used to transport people or property but was just empty for some hypothetical reason. In the present case, there was no evidence that Carlson was ever going to use the motor vehicle to transport people or property as a private motor carrier.

Finally, whether we are considering the guidance paragraph noted in the Commission's brief or the one we found, neither one discusses the legal question before us. The guidance paragraphs deal with whether something constitutes interstate

12

commerce and, thus, subjects someone to federal regulation. That is not the issue before us.

The district court's decision reversing the Commission's imposition of a fine against Carlson is affirmed.

Affirmed.