NOT DESIGNATED FOR PUBLICATION

No. 120,579

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

CAROLYN SCOFIELD,
*Appellee*,

v.

KANSAS EMPLOYMENT SECURITY BOARD OF REVIEW, et al.,
*Appellants*.

MEMORANDUM OPINION

Appeal from Marion District Court; STEVEN L. HORNBAKER, judge. Opinion filed April 24, 2020.
Reversed.

*Glenn H. Griffeth*, special assistant attorney general, Kansas Department of Labor, for appellant.

No appearance by appellee.

Before ATCHESON, P.J., WARNER, J., and WALKER, S.J.

PER CURIAM: In this judicial review action, the Kansas Employment Security
Board of Review (Board) appeals from the district court's reversal of its denial of
unemployment benefits to Carolyn Scofield. The district court determined that the
Board's decision to deny Scofield's claim for unemployment benefits for misconduct
connected with her job duties as an employee of a nursing home was error on multiple
grounds. On appeal, the Board argues the district court erred by engaging in
impermissible fact-finding and misinterpreting the law. Because we find that substantial
evidence supports the Board's decision and the employer met its burden of establishing

1

Scofield's misconduct by a preponderance of the evidence, we reverse the district court's decision and affirm the Board's decision.

FACTS

Carolyn Scofield worked as a dietary cook at a nursing home care facility in Whitewater, Kansas, for over 23 years. In 2017, the nursing home discharged Scofield for violating the company's patient privacy policy by taking photographs and videos of a resident without written permission. The policy in question states:

> "Any information concerning the business of [the nursing home], its residents, suppliers, staff members or personnel employed with [the nursing home] is confidential and restricted. You may not reveal any such information to others outside the [nursing home] or with those inside the [nursing home] who do not have a legitimate need to know this information . . . .
> "The following actions will be considered a violation of the above policies:
> "1. Taking a photograph of any person connected to [the nursing home] without their written permission is prohibited. Taking a photograph of anyone connected with [the nursing home] and posting on a social media website of any kind . . . is prohibited."

The events leading up to Scofield's discharge are not disputed. On December 4, 2017, Scofield was visiting a resident, who was also a friend, in the dining room of the nursing home where she was employed. A supervisor observed Scofield taking pictures of the resident and warned her that she was not allowed to take pictures or videos of the residents. Scofield told him that she did not believe she was in violation of the Health Insurance Portability and Accountability Act (HIPAA) and that she believed she could take pictures of the resident because she was off duty and was a friend. Scofield contended that she was taking the pictures and videos because the resident was having trouble eating, and the resident's daughter asked her to take the pictures because this was a medical issue that the daughter was trying to address.

2

About a week later, Scofield took more pictures and videos of the same resident while she was off duty, and the daughter was present. The employer did not observe Scofield taking pictures on this occasion, but a different family member, who also held the resident's durable power of attorney, made a complaint to the nursing home after photographs and videos of the resident circulated to the resident's family. Although the daughter was present when the pictures were taken, she did not have the "authorization . . . to receive or to distribute privileged information" regarding the resident.

After receiving the complaint, the nursing home terminated Scofield's employment. Following her termination, Scofield applied for unemployment benefits, but the Kansas Department of Labor (KDOL) denied her petition. The KDOL found Scofield was disqualified for unemployment insurance benefits because she was discharged for misconduct connected with her work pursuant to K.S.A. 2019 Supp. 44-706(b). Scofield appealed the KDOL determination to an appeals referee who conducted a telephone hearing with the parties.

During the referee's hearing, Scofield acknowledged that she "tried to walk that fine line between a resident and a friend" but maintained that she took the photos and videos as a friend rather than as an employee. Scofield testified that she has had other friends become residents of the nursing home and has been friends with the resident she photographed for 20 years. Scofield contended that she did not want to do anything that would get her terminated "[a]nd the only reason why [she] took those pictures . . . was because [the daughter] really did feel that her mother probably was dying."

A member of management at the nursing home testified that employee violations of serious policies, particularly ones having to do with privacy or residents' rights are a "one and done" offense. He added, "There are certain things that you can do that you only get to do once and then lose your job, this is one of them." The employer's witness

3

testified that Scofield was made aware of the privacy policy through a variety of measures.

The referee issued a written decision affirming Scofield's disqualification from unemployment benefits. The referee determined that the nursing home's policy prohibited the taking of pictures or videos of any residents, and this action constituted a violation of the employer's policy as well as HIPAA. The opinion explained that Scofield believed she had permission to take the photos and videos, and while Scofield was attempting to do a good deed, her actions were in violation of the employer's policies and involved privacy issues. As such, the referee determined Scofield's actions were misconduct.

Scofield timely appealed the referee's decision to the Board. From the record, it appears the Board held no hearing and received no additional testimony. However, the Board affirmed the referee's decision and adopted the findings of fact made by the referee. Scofield timely filed a petition for judicial review in the Marion County District Court. At a status conference held by the district court, the parties were given 14 days to file briefs on the matter. The Board filed a brief, but Scofield did not.

Subsequently, the district court issued an order reversing the Board's decision. The district court made findings of fact separate from those issued by the referee and determined that there was "no rule found in the record which prohibits an employee's off work activities or from visiting or taking images of a friend" and that "[t]he rules of taking pictures do not apply to an employee who is off duty." After reviewing the Board's adopted factual findings for substantial competent evidence, the district court determined that "the Agency erred when it found a violation of a non-existent Policy. If nothing governs the off-duty actions of an employee, then there [is] no policy to enforce." The district court also disagreed with the Board's interpretation of relevant caselaw and opined that the employer had a duty to "clearly and succinctly notify employees of their policies." Summarizing, the district court held that "[h]ere, they relied on a policy that

4

had no relationship to the alleged violation. An employer may not prohibit an employee's after-hours activities for to do so would exceed the purview of their interests and violate the privacy of the employee."

The Board has timely appealed the district court's decision.

ANALYSIS

1. *Standards for review.*

Scofield's action is governed by the provisions of the Kansas Judicial Review Act (KJRA), K.S.A. 77-601 et seq. The KJRA defines the scope of judicial review of actions taken by state agencies or boards. K.S.A. 77-603(a). Any party to an agency or board action before a district court under the KJRA may appeal the district court's decision. K.S.A. 77-623. We exercise the same statutorily limited review of the Board's action as does the district court, as though the appeal had been made directly to us. *In re Tax Appeal of Fleet*, 293 Kan. 768, 776, 272 P.3d 583 (2012); *Carlson Auction Service, Inc. v. Kansas Corporation Comm'n*, 55 Kan. App. 2d 345, 349, 413 P.3d 448 (2018). On appeal, the burden of proving the invalidity of action taken by an agency or board rests on the party asserting such invalidity. K.S.A. 77-621(a)(1); *Milano's, Inc. v. Kansas Dept. of Labor*, 296 Kan. 497, 500, 293 P.3d 707 (2013).

The KJRA outlines eight circumstances under which relief may be granted. K.S.A. 77-621(c). It is unclear from Scofield's petition under which ground she has brought her complaint, but it appears that she is arguing that the Board's denial of her petition for unemployment benefits was "based on a determination of fact, made or implied by the agency, that is not supported by the appropriate standard of proof by evidence that is substantial when viewed in light of the record as a whole." K.S.A. 77-621(c)(7). And because Scofield was terminated for misconduct and denied benefits because of such

5

misconduct, the employer bears the burden of proving misconduct by a preponderance of the evidence. *Rhodenbaugh v. Kansas Employment Sec. Bd. of Review*, 52 Kan. App. 2d 621, 630, 372 P.3d 1252 (2016); see *Farmland Foods, Inc. v. Abendroth*, 225 Kan. 742, 743-44, 594 P.2d 184 (1979).

Because Scofield appears to be appealing under K.S.A. 77-621(c)(7), we must determine whether the factual findings made by the appeals referee—and adopted by the Board—are supported by substantial evidence when viewed in light of the record as a whole. See K.S.A. 77-621(c)(7); *Sierra Club v. Moser*, 298 Kan. 22, 62-63, 310 P.3d 360 (2013). This analysis requires us to: "(1) review evidence both supporting and contradicting the agency's findings; (2) examine the presiding officer's credibility determination, if any; and (3) review the agency's explanation as to why the evidence supports its findings." *Williams v. Petromark Drilling*, 299 Kan. 792, 795, 326 P.3d 1057 (2014); K.S.A. 77-621(d). Substantial evidence is such legal and relevant evidence as a reasonable person might accept as being sufficient to support a conclusion. *Gannon v. State*, 298 Kan. 1107, 1175-76, 319 P.3d 1196 (2014). We do not reweigh the evidence before the Board or engage in de novo review. K.S.A. 77-621(d).

Although we cannot reweigh evidence or engage in an unlimited review, our task is to consider "'whether the evidence supporting the [Board's] decision has been so undermined by cross-examination or other evidence that it is insufficient to support the [Board's] conclusion.'" *Buchanan v. JM Staffing, LLC*, 52 Kan. App. 2d 943, 948, 379 P.3d 428 (2016). In doing so, our review of questions of law is unlimited. And in reviewing questions of law, we give no deference to an administrative agency or board on statutory or regulatory interpretation. *Douglas v. Ad Astra Information Systems*, 296 Kan. 552, 559, 293 P.3d 723 (2013).

Thus, we must determine whether substantial evidence supports the Board's determination that the nursing home proved Scofield's misconduct by a preponderance of

the evidence. This determination requires a two-step analysis. First, the findings of fact will be reviewed for substantial evidence. Then, the Board's decision will be reviewed to determine whether the employer met its burden of proving misconduct. *Rhodenbaugh*, 52 Kan. App. 2d at 630-31.

2. *The Board's findings are supported by substantial evidence.*

In this appeal, the Board takes issue with the district court's independent fact-finding. The Board argues that, in reaching its decision, "the district court engaged in improper fact finding of its own." It alleges the district court's factual findings are not supported by the record and certain findings are "factually incorrect." The Board contends that the district court erred when it "engag[ed] in its own fact-finding on the issue, rather than giving proper deference to the Agency['s] factual determination," and "[t]his factual error is compounded in the district court's conclusions drawn therefrom."

Although we are to act as though the appeal had been made directly to us, we believe the Board's argument has merit. See *Fleet*, 293 Kan. at 776. The district court acknowledged that it was to review "the agency's factual findings to see whether substantial evidence supports them in light of the whole record." But instead of reviewing for substantial evidence, we concur that the district court engaged in its own fact-finding and reweighed the evidence to support its position. Apart from being employed as a dietary cook, there is no evidence in the record detailing what duties Scofield had as an employee. Despite this lack of evidence, the district court found "[h]ere, the off the job actions of the employee were not work connected and were not reasonably related to employer's business." The court concluded that "[t]here is no way that a cook working in a kitchen and not working in a care capacity could in any way tie her working relationship . . . to patient. Taking an image of a resident, no doubt, is common in a care home. Families and friends visit often and this is simply common knowledge and logic." Simply put, nothing in the record supports these factual findings because nothing in the

record contains any information regarding Scofield's job duties. It is clear that the district court was substituting its feelings for what the facts ought to be into gaps in the record.

In any event, the factual findings made by the appeals referee—as adopted by the Board—are supported by substantial evidence. A review of the evidence both confirming and contradicting the Board's findings supports the referee's findings because the majority of the facts were conceded by Scofield. K.S.A. 77-621(d); see *Williams*, 299 Kan. at 795. Scofield admitted to taking pictures and videos of the resident on two occasions. Scofield admitted to being aware of her employer's policy that prohibited employees from taking pictures or videos of residents, and the record contains a signed acknowledgment that Scofield would be "bound by the policies, practices and rules" contained in the employee handbook. In fact, in her appeal to the Board, Scofield attached a copy of the policy in question from the last copy of the employee manual she had received.

A review of the referee's explanation as to why the evidence supports its findings is also supported by substantial evidence. K.S.A. 77-621(d); *Williams*, 299 Kan. at 795. The referee found that Scofield was discharged for a violation of the employer's privacy policy in December 2017. This determination was based on Scofield's testimony that she took the pictures at the direction of a family member and the employer's testimony that a policy prohibited this action. The referee also found that Scofield believed she had the permission to take the photos, but this permission was misguided. This finding is supported by the evidence because the employer testified that the family member who gave Scofield permission to take the photos did not have the authority to do so, and Scofield had been warned by her employer previously.

In short, we concur with the Board that the findings made by the appeals referee—as adopted by the Board—are supported by substantial evidence. A review of the evidence both supporting and contradicting the Board's finding is sufficient to find

substantial evidence to support the factual findings made by the referee. And a review of the referee's explanation as to why the evidence supports its findings is also substantial.

3. *The employer proved Scofield's misconduct by a preponderance of the evidence.*

Before turning to our analysis of whether the nursing home has met its burden of proving Scofield's misconduct, we must note our agreement with the Board's contention that the district court relied on incorrect legal standards when making its decision. For example, the district court cited to caselaw that provided claimants are entitled to a "liberal interpretation of the law," but K.S.A. 2019 Supp. 44-702 was amended in 2013 to provide that "a neutral interpretation" should be employed.

Individuals who are unemployed because they were discharged for misconduct connected with their work are ineligible for unemployment benefits. K.S.A. 2019 Supp. 44-706(b). The employer bears the burden of proving misconduct by a preponderance of the evidence. *Rhodenbaugh*, 52 Kan. App. 2d at 630. Under a preponderance of the evidence standard, it must be demonstrated that "'a fact is more probably true than not true.'" *Gannon*, 298 Kan. at 1124. Thus, in this present action, the nursing home has the burden to prove that it discharged Scofield for misconduct connected with her employment.

K.S.A. 2019 Supp. 44-706 provides, in part, as follows:

"An individual shall be disqualified for benefits:
       . . . .
       "(b) If the individual has been discharged or suspended for misconduct connected with the individual's work. . . .
       (1) For the purposes of this subsection, 'misconduct' is defined as a violation of a duty or obligation reasonably owed the employer as a condition of employment including, but not limited to, a violation of a company rule, including a safety rule, if:

(A) The individual knew or should have known about the rule; (B) the rule was lawful and reasonably related to the job; and (C) the rule was fairly and consistently enforced."

We will examine each prong of the statutory criteria for misconduct in turn.

a. *Scofield knew about the rule.*

First, the employer was required to prove that Scofield knew or should have known about the rule. K.S.A. 2019 Supp. 44-706(b)(1). The employer established that it had personally warned Scofield about the rule after the first occurrence, Scofield signed an acknowledgement of the policy, and she admitted to being aware of the policy. Thus, the employer proved by a preponderance of the evidence that Scofield was aware of the rule.

b. *The rule was lawful and reasonably related to Scofield's job.*

Generally, an "employee's conduct off the working premises and outside the course or scope of his [or her] employment is generally not considered misconduct in connection with employment." *National Gypsum Co. v. Kansas Employment Security Bd. of Review*, 244 Kan. 678, 686, 772 P.3d 786 (1989). However, the *National Gypsum Co.* court delineated an exception to this general rule that excludes off-duty actions by an employee "where the conduct is so closely connected with the business interests of the employer as to warrant disqualification for unemployment benefits." 244 Kan. at 686.

The *National Gypsum Co.* court analyzed misconduct under a previous version of the employment security law statute, K.S.A. 1988 Supp. 44-706(b), which provided that "an employee *shall* be disqualified for unemployment compensation benefits if the employee has been discharged for misconduct '*connected* with the individual's work.'" 244 Kan. at 686. In 1988, misconduct was defined as a "'violation of a duty or obligation reasonably owed the employer as a condition of employment.'" 244 Kan. at 686. The

10

statute has been amended since 1988, but the language analyzed remains in effect today and although the court was interpreting a previous version of the statute, the court's reasoning is instructive:

> "The provisions of an unemployment compensation statute relating to the disqualification to receive unemployment compensation benefits in the case of a discharge for misconduct are intended to deny unemployment compensation to a claimant who is discharged because of misconduct, *regardless of when or where it occurred, so long as such misconduct is in law connected with the employee's work*. There is no merit to the argument that an act of misconduct relating to the private life of an employee is connected with his [or her] employment. The fundamental issue is whether the misconduct adversely affected the employee's ability and capacity to perform his duties." (Emphasis added.) 244 Kan. at 686.

Here, it appears the district court distinguished the *National Gypsum Co.* precedent because the employer in *National Gypsum Co.* had a policy controlling off-duty employee conduct and the employer here had no such policy. This was an incorrect interpretation of the holding in *National Gypsum Co.* because nothing in the opinion suggests that it is applicable only to off-duty policies. Rather, the court was more concerned with policies that are connected with an employee's work "regardless of when or where [the misconduct] occurred." 244 Kan. at 686. As such, the *National Gypsum Co.* court held: "To exclude a discharged employee from unemployment benefits for off-the-job misconduct, the off-duty misconduct must be work connected and reasonably related to the employer's business." 244 Kan. at 687.

Thus, under *National Gypsum Co.*, Scofield's conduct must be "so closely connected with the business interests" of the nursing home as to warrant disqualification for unemployment benefits under the "reasonably related" prong of this analysis. The policy in question was designed to "respect confidential information" of the residents of the nursing home and control any employee access to confidential information of its

11

residents. And as such, while a portion of the policy deals directly with taking photos and videos, the premise of the policy is to protect the confidential information of the nursing home residents.

The nursing home undoubtedly has a business interest in protecting the confidential information of its residents at any time. Practically, Scofield's assertion that she did not violate the policy because she was off duty could lead to significant violations of confidentiality. And we concur with the privacy concern, mentioned by the Board in its brief, that Scofield's interpretation could "lead to the absurd result that an employee entrusted with personal medical information would not violate an employer's policy against disclose of such information by simply sharing the information online, while at home, off-duty." Our conclusion on this is buttressed by the explicit finding of the appeals referee that Scofield's actions were a violation of HIPAA, the federal law safeguarding the privacy of most medical information.

The employer's rule aimed at protecting resident confidentiality is reasonably related to Scofield's job. By being an employee of the nursing home, Scofield had access to the residents, and she admitted there was a fine line between a resident and a friend. Scofield had an obligation to respect the confidentiality of the residents as an employee of the nursing home, and this obligation did not end at the completion of Scofield's workday or because she was a friend of the resident. As stated by the employer, policies having to do with privacy or residents rights were serious policies. The privacy policy was so serious that a violation was considered something "that you only get to do once and then you lose your job."

Protecting resident confidentiality is not the only concern the employer had with Scofield's actions. The employer testified that it received a complaint from the holder of the resident's durable power of attorney, who was also a family member, regarding the incident. Although not explicitly stated by the employer, it is logical to assume that it is

12

within the nursing home's business interests to mitigate complaints by family members of residents. This assumption is supported by the employer's discharge of Scofield after receiving a complaint by a family member.

From our review of the record we are convinced the employer proved by a preponderance of the evidence that the policy protecting the confidential information of residents, and thus prohibiting an employee from taking pictures or videos of residents, was reasonably related to Scofield's job.

### c. *The rule was fairly and consistently enforced.*

Finally, the employer must have shown by a preponderance of the evidence that the rule was fairly and consistently enforced. To meet this burden, the employer's witness testified that he gave Scofield a warning after the first occurrence and terminated her employment only after receiving a complaint that she engaged in the conduct a second time. Although the second chance cuts against the consistency of enforcement regarding violations of this policy, the record shows that violations were normally a "one and done" offense. The employer testified to this at the hearing, the policy itself stated a violation would result in termination, and Scofield attached communications by her supervisor that stated:  "Any staff member who takes a picture of a resident in violation of our privacy policy will be terminated."

Although the employer did not present any numbers or statistics to prove this policy is consistently enforced, a preponderance of the evidence when viewed in light of the entire record shows that the nursing home consistently claimed this was an offense that resulted in termination of employment. Thus, we concur that a violation of this policy constitutes misconduct under K.S.A. 2019 Supp. 44-706(b)(1).

Because the nursing home showed that Scofield's action met the definition of misconduct under K.S.A. 2019 Supp. 44-706(b)(1) by a preponderance of the evidence, she is disqualified from receiving unemployment benefits under K.S.A. 2019 Supp. 44-706(b). Based upon this conclusion, we reverse the district court's decision reversing the Board's action and affirm the Board's decision denying Scofield's request for unemployment benefits.

Reversed.