NOT DESIGNATED FOR PUBLICATION

No. 127,066

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

SAINT LUKE'S HEALTH SYSTEM, INC., and SAINT LUKE'S SOUTH HOSPITAL, INC.,
*Appellees*,

v.

STATE OF KANSAS ex rel. AMBER SCHULTZ, SECRETARY,
KANSAS DEPARTMENT OF LABOR;
STATE OF KANSAS ex rel. KRIS KOBACH, ATTORNEY GENERAL,
*Appellants*.


MEMORANDUM OPINION

Appeal from Johnson District Court; DAVID W. HAUBER, judge. Oral argument held October 15, 2024. Opinion filed January 17, 2025. Affirmed in part and reversed in part.

*Ryan J. Ott*, assistant solicitor general, *Anthony J. Powell*, solicitor general, and *Kris W. Kobach*, attorney general, for appellants.

*Curtis L. Tideman* and *Carrie E. Josserand*, of Lathrop GPM LLP, of Kansas City, Missouri, for appellees.


Before CLINE, P.J., MALONE and SCHROEDER, JJ.


PER CURIAM: In this appeal, we are tasked with determining whether the district court properly reversed the Kansas Department of Labor's (KDOL) finding that Saint Luke's Health System, Inc. and Saint Luke's Hospital South, Inc. (St. Luke's) violated Sec. 1 of 2021 Special Session Bill H.B. 2001, now codified into law as K.S.A. 2023 Supp. 44-663. If an employer has implemented a COVID-19 vaccine requirement, this statute requires the employer to exempt any employee from that requirement who submits

1

a written waiver request stating that complying with such requirement (1) would endanger the life or health of the employee or someone who resides with the employee or (2) violates sincerely held religious beliefs of the employee. K.S.A. 2023 Supp. 44-663(a).

Sheryl Glean, an employee of St. Luke's, submitted a written request for a religious exemption from St. Luke's COVID-19 vaccine mandate on a preprinted electronic company form. But St. Luke's denied the request because it interpreted the language Glean used as expressing a concern about physical harm from the vaccine rather than a sincerely held religious belief against getting the vaccine. It then placed Glean on administrative leave and eventually terminated her for failing to meet St. Luke's vaccine mandate.

Under K.S.A. 2023 Supp. 44-663, an employee aggrieved by a violation of the statute may file a complaint with the Secretary of Labor. Glean filed such a complaint, leading to KDOL's finding that St. Luke's violated K.S.A. 2023 Supp. 44-663. St. Luke's then petitioned the Johnson County District Court for review of KDOL's decision under K.S.A. 77-601 et seq., naming Appellants (collectively, KDOL) as defendants. KDOL moved to transfer venue to Shawnee County, which was denied.

The Johnson County District Court granted St. Luke's petition and reversed KDOL's decision. The court found KDOL erroneously interpreted K.S.A. 2023 Supp. 44-663 and that KDOL's decision was not supported by substantial evidence. Essentially, the court agreed with St. Luke's and found Glean did not "articulate[] any basis for her beliefs about physical harm or the foundation for her sincerely held religious beliefs." It interpreted K.S.A. 2023 Supp. 44-663 to allow an employer to scrutinize an employee's statement to determine whether the employee's invocation of the religious exemption was religiously based. It then scrutinized Glean's statement and found she had failed to

2

articulate a religious basis for opposing the COVID-19 vaccine, noting Glean admitted to receiving other vaccines in the past.

We do not read K.S.A. 2023 Supp. 44-663 to empower employers to scrutinize an employee's request for a religious exemption as strictly as the district court did. The statute does not require the employee to articulate a basis for their sincerely held religious beliefs, nor does it require the employee to provide written evidence of those religious beliefs, as the district court held Glean was required to do. It only requires the employee to explain in a written statement that complying with a COVID-19 vaccine mandate would violate their sincerely held religious beliefs, which Glean did. K.S.A. 2023 Supp. 44-663(a). And, in fact, the statute specifies:  "An employer shall grant an exemption requested in accordance with this section based on sincerely held religious beliefs without inquiring into the sincerity of the request." K.S.A. 2023 Supp. 44-663(b).

For these reasons, we reverse the district court's decision to grant the petition for review which reversed KDOL's decision. But since we find venue is proper in Johnson County, we affirm the district court's decision to deny KDOL's motion to transfer venue.

FACTUAL AND PROCEDURAL BACKGROUND

On August 30, 2021, St. Luke's announced that all employees were to be fully vaccinated against COVID-19 by October 30, 2021. According to St. Luke's announcement, this policy applied to all employees, and it noted:  "Employees may request a medical or religious exemption. These requests will be individually reviewed on a case-by-case basis by either Saint Luke's clinicians or Saint Luke's Spiritual Wellness chaplains." And any employee who is granted an exemption would be "required to undergo weekly COVID-19 testing and monitoring."

3

Glean refused the vaccination based on her religious beliefs. She submitted an exemption request through St. Luke's intranet electronic form on September 14, 2021. The only portion of the request in the record reveals Glean stated the following in response to St. Luke's preprinted questions:

| Provide a statement outlining your sincerely held religious beliefs concerning the COVID-19 vaccine | Provide the approximate date you first began holding these sincerely held religious beliefs concerning vaccination, and when, where, and how you have adhered to it: | Identify any other individual or prior employer who has knowledge of your adherence to the religious belief, observance, or practice identified above, including, for example, a religious leader... |
| --- | --- | --- |
| I refused to get the Covid Vaccine because of my religious vews and practice as *I truly believe that the vaccine may cause harm to my body* i have submitted form from my church regarding this matter | Since the day that i became Christian i believe that the bible tells me that my body is holy and two years ago finding about this Covid i have decided not to take the vaccine because of that belief made me decide to find other jobs | I've talk to my Pastor from my church and other family members about my decision refusing to get the vaccine and i did my own research regarding Covid vaccine and they help me with my decissions |

St. Luke's claims Glean also admitted in her application that she had been vaccinated for TDaP and influenza in the past. But it does not explain where or how this information was provided. And St. Luke's claims it never received the form from her pastor which Glean mentioned in her statement. St. Luke's cites its letter to KDOL in response to Glean's complaint to support these factual allegations. Since Glean does not dispute or address these allegations on appeal, we assume they are true.

According to St Luke's, a committee of managers from St. Luke's Human Resources Department and St. Luke's Spiritual Wellness Department reviewed all submissions for COVID-19 vaccine exemptions. St. Luke's claims some requests for exemption were approved and some were denied. On October 1, 2021, St. Luke's denied Glean's exemption request by email to Glean. The email simply stated: "Your request for a religious exemption from St. Luke's Health System COVID-19 Vaccination Policy has been denied. Please refer to the vaccination deadlines and resources below to ensure you will be in compliance with the policy." The email reiterated the vaccination deadline and provided resources where Glean could be vaccinated. The email did not explain why

4

Glean's request was denied, it did not seek additional information from Glean, nor did it mention that Glean's form from her church was missing.

According to St. Luke's response letter to KDOL, Glean followed up with St. Luke's and raised concerns about how she believed her exemption request should have been approved. Again, according to St. Luke's response letter, the committee rereviewed her request and issued a final denial email on October 29, 2021. That email is not in the record, nor are any documents associated with Glean's communication with St. Luke's after its denial.

Glean failed to provide proof of a COVID-19 vaccination by the October 30, 2021 deadline. St. Luke's placed Glean on administrative leave and provided her with an extended deadline to get vaccinated by November 30, 2021. Glean did not provide proof of vaccination before the extended deadline, so her employment was terminated on November 30.

Glean filed an "Employer COVID-19 Vaccine Requirement/Exemptions Complaint" with KDOL a few months later. The complaint alleged St. Luke's improperly denied her exemption request under K.S.A. 2023 Supp. 44-663. The complaint was on a standard form provided by KDOL.

After Glean submitted the complaint, KDOL served St. Luke's with a notice of the complaint and gave it a chance to respond. In its response, St. Luke's stated it denied Glean's request because the request was not based on a religious belief. St. Luke's explained: "Because her belief was founded on the concept that she was afraid the vaccine would cause her physical harm, it was denied as not being a *religious* request."

A few weeks later, KDOL issued a final order finding St. Luke's violated K.S.A. 2023 Supp. 44-663. KDOL found Glean submitted a valid written waiver request, and St.

5

Luke's took punitive action when it terminated Glean for failure to comply with its vaccination requirement despite producing a company approved religious waiver.

Shortly after, St. Luke's filed its petition for review in the Johnson County District Court. KDOL moved to transfer the venue to Shawnee County, which was denied.

On review, the district court found Glean did not demonstrate a sincerely held religious belief. It focused on how Glean articulated her belief, stating:

> "If the legislature intended to ban all vaccination requirements without any semblance of a religious justification rooted in something other than an ad hoc invocation, it could have stated that no employer can insist on any vaccination requirement if the employee use singularly or in combination words such as 'my body is holy' or 'it violates the Bible' or 'I am a Christian' as the basis for refusing a vaccination policy."

The district court continued and noted St. Luke's was correct in denying Glean's request because Glean "focused on her concern about physical harm to her body and then sought to conflate that with some religious concern over her 'holy' body concerns." The district court also stated:

> "In fact, she did not articulate *any* religious beliefs whatsoever related to the COVID-19 vaccine as opposed to other vaccines that she accepted. KDOL's interpretation of H.B. 2001 would end up shirking any real scrutiny of the employee's purported invocation of words that sound religious, but, in fact, are devoid of any religious justification."

In sum, the district court found KDOL misinterpreted the law, and that substantial evidence did not support KDOL's conclusion. This appeal followed.

*Did the district court correctly conclude KDOL erroneously interpreted K.S.A. 2023 Supp. 44-663?*

In its petition for review, St. Luke's first challenged KDOL's order under K.S.A. 77-621(c)(4), which allows a court to grant relief if the agency has erroneously interpreted or applied the law. The district court granted relief on this basis, in part, after finding KDOL misinterpreted K.S.A. 2023 Supp. 44-663. KDOL argues the court erred because KDOL properly interpreted the statute.

*Standard of review*

Statutory interpretation presents a question of law over which appellate courts have unlimited review. *Bruce v. Kelly*, 316 Kan. 218, 224, 514 P.3d 1007 (2022). The most fundamental rule of statutory construction is that the intent of the Legislature governs if that intent can be ascertained. *Johnson v. U.S. Food Service*, 312 Kan. 597, 600, 478 P.3d 776 (2021). Appellate courts "begin with the plain language of the statute, giving common words their ordinary meaning." 312 Kan. at 600. When a statute is plain and unambiguous, an appellate court should refrain from speculating about the legislative intent behind that clear language, and it should not read something into the statute that is not readily found in its words. *Schmidt v. Trademark, Inc.*, 315 Kan. 196, 200, 506 P.3d 267 (2022). Only if the statute's language or text is unclear or ambiguous does the court use canons of construction or legislative history to construe the Legislature's intent. *In re Joint Application of Westar Energy & Kansas Gas and Electric Co.*, 311 Kan. 320, 328, 460 P.3d 821 (2020).

The Kansas Judicial Review Act (KJRA) defines the scope of judicial review of state agency actions unless the agency is specifically exempted from application of the statute. K.S.A. 77-603(a); *Bd. of Cherokee County Comm'rs v. Kansas Racing & Gaming*

7

*Comm'n*, 306 Kan. 298, 318, 393 P.3d 601 (2017). Appellate courts exercise the same statutorily limited review of the agency's action as does the district court. In other words, appellate courts review the agency action as if the appeal had been made directly to the appellate court. 306 Kan. at 318.

*K.S.A. 2023 Supp. 44-663*

House Bill 2001, which was later codified as K.S.A. 2023 Supp. 44-663, K.S.A. 2023 Supp. 44-664, and K.S.A. 2023 Supp. 44-709b, was signed into law on November 23, 2021. L. 2021, ch. 1, §§ 1-3 (Special Session). It provides that an employer must exempt an employee from receiving the COVID-19 vaccine when the employee requests an exemption due to a medical condition or a sincerely held religious belief. It states, in relevant part:

"(a) Notwithstanding any provision of law to the contrary, if an employer implements a COVID-19 vaccine requirement, the employer shall exempt an employee from such requirement, without punitive action, if the employee submits a written waiver request to the employer stating that complying with such requirement would:

(1) Endanger the life or health of the employee or an individual who resides with the employee, as evidenced by an accompanying written statement signed by a physician or another person who performs acts pursuant to practice agreements, protocols or at the order, direction or delegation of a physician; or

(2) violate sincerely held religious beliefs of the employee, as evidenced by an accompanying written statement signed by the employee.

"(b) An employer shall grant an exemption requested in accordance with this section based on sincerely held religious beliefs without inquiring into the sincerity of the request.

"(c)(1) An employee aggrieved by a violation of this section may file a complaint with the secretary of labor alleging that an employer failed to offer an exemption, improperly denied an exemption request, took punitive action against the employee or committed any other violation of this section.

(2)(A) The secretary of labor shall promptly commence an investigation of each complaint filed pursuant to this subsection. The secretary shall complete such investigation and issue a final order within 60 calendar days after the filing of the complaint. At a minimum, the investigation shall determine whether:

(i) The employer imposed a COVID-19 vaccine requirement;

(ii) the employee submitted a written waiver request in accordance with this section; and

(iii) the employer committed any violation of this section.

(B) Upon completing the investigation, the secretary of labor shall issue an order containing findings and conclusions as to whether the employer violated this section and provide such order to the employee and the employer. Such order is a final order for purposes of judicial review and shall state the right of the employee or the employer to appeal as provided in the Kansas judicial review act.

(C) If the secretary of labor issues a final order finding that an employer violated this section, the secretary shall issue an order containing such findings and provide such order to the employee, the employer and the attorney general." K.S.A. 2023 Supp. 44-663.

The statute empowers the Kansas attorney general to enforce an order from KDOL finding an employer violated the statute by filing a civil action in an appropriate district court to impose civil penalties as designated in the statute. K.S.A. 2023 Supp. 44-663(c)(3)(A). But the attorney general cannot file such an action if the employer reinstates the terminated employee with back pay to the date the complaint was received by KDOL. K.S.A. 2023 Supp. 44-663(c)(3)(B).

The statute defines several terms. One of them is "'religious beliefs'" which "includes, but is not limited to, theistic and non-theistic moral and ethical beliefs as to what is right and wrong that are sincerely held with the strength of traditional religious views." K.S.A. 2023 Supp. 44-663(d)(8).

*Glean's statement satisfies the plain language of the statute.*

The district court upheld the denial of Glean's request and determined KDOL misinterpreted the statute because it found Glean did not articulate a religious basis for her request. But the district court improperly heightened the requirements under the statute and ignored the context in which they were made—that is, formulated to answer the three questions posed in St. Luke's preprinted electronic form.

To begin, K.S.A. 2023 Supp. 44-663 does not require much detail to support an employee's exemption request. Instead, it simply requires the employee to submit a written statement which states that complying with the vaccine mandate would (1) endanger the life or health of an employee or an individual who resides with the employee, or (2) violate the employee's sincerely held religious beliefs. While both types of requests must be "evidenced by an accompanying written statement," the Legislature provided no parameters for what must be included in such statement. K.S.A. 2023 Supp. 44-663(a)(1), (a)(2). It only specified who must provide the statement: (1) to support a medical exemption, the statement must be "signed by a physician or another person who performs acts pursuant to practice agreements, protocols or at the order, direction or delegation of a physician," and (2) to support a religious exemption, the statement must be "signed by the employee." K.S.A. 2023 Supp. 44-663(a)(1), (a)(2).

Here, St. Luke's agrees and the district court found that Glean provided a signed written statement, which means this dispute centers on the content of that statement. St. Luke's contends and the district court found that the way Glean explained how the vaccine mandate violated her sincerely held religious beliefs was insufficient because they both interpreted her explanation to relate to secular concerns about physical harm instead of religious beliefs. And St. Luke's argues on appeal that Glean's statement is deficient because it claims she did not articulate a connection between her religious beliefs as to what is right and wrong and her reluctance to receive the vaccine.

10

But we do not read Glean's statement as narrowly as the district court and St. Luke's. Not only did she explain that her refusal to get the COVID-19 vaccine is based on her religious views—as in she believes the vaccine may cause harm to her body—she clarified the religious basis for her concern (or why she believes getting the vaccine would be wrong) when she said since she became a Christian she believes the Bible tells her that her body is holy. See 1 Corinthians 6:19-20, New International Version Bible ("Do you not know that your bodies are temples of the Holy Spirit, who is in you, whom you have received from God? You are not your own; you were bought at a price. Therefore honor God with your bodies."). Glean further evidenced the religiosity of her beliefs when she stated that she had discussed her concerns about getting the vaccine with the pastor from her church. Glean's invocation of both the Bible and her pastor as sources of guidance in this matter evidence the religiosity of her beliefs about the COVID-19 vaccine.

The statute does not set the bar as high as the district court and St. Luke's. While the employee must provide a written statement to support his or her claim, the statute does not require the employee to "provid[e] written evidence of those religious beliefs," as the district court held. Just like a request for a medical exemption does not require medical records to substantiate the request—it only requires a written statement from a physician or someone under the order, direction, or delegation of a physician—a request for a religious exemption under the statute does not require evidence beyond the employee's statement to substantiate the request. See K.S.A. 2023 Supp. 44-663(a).

Personal religious views are often subjective to the individual believer and can be based on an individual's personal interpretation of religious texts or teachings. They do not lend themselves to the kind of truth value test the district court and St. Luke's imposed. The language of the statute acknowledges the philosophical nature of personal religious views by prohibiting an inquiry into the sincerity of the employee's religious

11

beliefs. The district court's and St. Luke's attempt to graft a litmus test onto the statute is simply not supported by its plain language.

The district court found KDOL's view of Glean's statement would render the statute meaningless because the court found Glean failed to provide a "basis for her beliefs about physical harm or the foundation for her sincerely held religious beliefs." We disagree. Glean explained the basis for her beliefs when she explained that she believes the vaccine may cause harm to her body, and she said she believes the Bible tells her that her body is holy. We interpret Glean's statements to indicate her religious beliefs tell her to be cautious about what substances are injected into her body, so we find the district court erred in reading Glean's statements to only relate to secular physical harm concerns.

Both the district court and St. Luke's fault Glean for her failure to provide "any reference from her pastor or other documentation to demonstrate *any* reasoning for refusing to receive the vaccine," noting she suggested she would provide something from her pastor but did not. But this reason for the denial of Glean's claim seems pretextual. First, the statute does not require Glean to submit something from her pastor—it only requires a statement signed by the employee. K.S.A. 2023 Supp. 44-663(a). And if St. Luke's found such a statement relevant to its decision, it could have notified Glean that it did not receive the statement. Instead, it denied her request in a terse email without mentioning any deficiencies in her submission.

We also find it improper to base St. Luke's denial of Glean's request on a failure to provide this documentation because the statute prohibits the employer from inquiring into the sincerity of the employee's request. Arguably, the additional information requested in the middle and right columns of St. Luke's form does just that by asking for details as to when the employee "first began holding these sincerely held religious beliefs concerning vaccination, and when, where, and how you have adhered to it" and asking the employee to "[i]dentify any other individual or prior employer who has knowledge of your

12

adherence to the religious belief, observance, or practice identified above, including, for example, a religious leader." And requiring a letter from her pastor is an attempt to authenticate Glean's request, which the statute prohibits.

While the district court—and St. Luke's—claim not to have questioned the sincerity of Glean's belief, a closer look reveals that is not the case. Both mention the fact that Glean had received other vaccines to justify their findings that Glean's beliefs about the COVID-19 vaccine were not "real religious opposition to the vaccine." These sentiments seem to articulate that Glean's beliefs were insincere because she apparently did not object to all vaccines. But, again, the statute clearly prohibits the employer from inquiring into the sincerity of the request—and questioning the consistency of Glean's exercise of her beliefs is aimed to do just that. What is more, an apparent inconsistency in obtaining vaccines (or a religious conversion after receipt of prior vaccines) does not necessarily evidence that Glean's beliefs were secularly based on concerns about physical harm. While the record does not reveal how St. Luke's asked or why Glean revealed that she had received vaccines in the past, this information seems designed to test the sincerity of a religious belief rather than the religiosity of it.

Although not mentioned by the district court, on appeal St. Luke's cites a string of Title VII cases where it claims federal courts rejected "fears of COVID-19 vaccine safety couched in religious terminology." But these cases are not controlling or persuasive in interpreting a state statute that has its own—and broader—definition of religious beliefs. The definition of religion adopted by the federal courts cited by St. Luke's—set forth in *Africa v. Com. of Pa.*, 662 F.2d 1025 (3d Cir. 1981)—is much more demanding than the definition of religious beliefs in K.S.A. 2023 Supp. 44-663(d)(8). See *Berna v. Bayhealth Med. Ctr., Inc.*, No. CV 23-945-RGA, 2024 WL 456420, at *2-3 (D. Del. 2024).

13

In *Africa*, the Third Circuit defined religion as involving:

"First, a religion addresses fundamental and ultimate questions having to do with deep and imponderable matters. Second, a religion is comprehensive in nature; it consists of a belief-system as opposed to an isolated teaching. Third, a religion often can be recognized by the presence of certain formal and external signs." *Fallon v. Mercy Catholic Medical Center*, 877 F.3d 487, 491 (3d Cir. 2017) (citing *Africa*, 662 F.2d at 1032).

Yet K.S.A. 2023 Supp. 44-663(d)(8) defines "religious beliefs" more broadly, noting it "includes, but is not limited to, theistic and non-theistic moral and ethical beliefs as to what is right and wrong that are sincerely held with the strength of traditional religious views."

Further, Title VII cases examine whether an employer has discriminated against an employee based on that employee's religion, not whether an employee has provided the necessary statement under K.S.A. 2023 Supp. 44-663(a). And while K.S.A. 2023 Supp. 44-663(b) prohibits an inquiry into the sincerity of an employee's belief, the first prong of a district court's inquiry into whether a plaintiff has plausibly pled a prima facie Title VII religious discrimination claim includes examining whether the employee's belief is "sincerely held," which is a question of fact. *Berna*, 2024 WL 456420, at *2.

The federal courts in the cases St. Luke's cites also noted those plaintiffs asserted scientific or medical reasons to explain the basis for their asserted religious objections to the COVID-19 vaccine—such as health side effects, potential future health risks, and chemicals/carcinogens associated with swab and testing material in *Finkbeiner v. Geisinger Clinic*, 623 F. Supp. 3d 458, 466 (M.D. Pa. 2022), and "'potential . . . adverse physical health outcomes'" from the COVID-19 vaccine supported by the plaintiff's discussion of scientific studies in *Berna*, 2024 WL 456420, at *4. In *Federoff v. Geisinger Clinic*, 571 F. Supp. 3d 376, 387-88 (M.D. Pa. 2021), the plaintiffs provided

14

"no information whatsoever about their [religious] beliefs in their second amended complaint or their brief," but were "hyper-focus[ed] on the 'science' of testing and its potentially harmful health effects." And in *Ellison v. Inova Health Care Services*, 692 F. Supp. 3d 548, 558-59 (E.D. Va. 2023), the court found two employees' exemption requests did not satisfy the test for religious beliefs set forth in *Africa* and the third's was not based on sufficiently religious concerns since that employee "support[ed] his claim through references to his 'personal analyses' of CDC and FDA databases that he believes prove that 'there is a 28 times more likely chance of adverse reactions from the COVID-19 vaccines in the last 15 months, than from any of the other 50+ vaccinations.'" Glean's request was rooted more firmly in her religious beliefs—rather than scientific studies— than those identified in the Title VII cases St. Luke's cited.

One of the cases St. Luke's relies on, *Passarella v. Aspirus, Inc.*, No. 22-cv-287, 2023 WL 2455681 (W.D. Wis. 2023) (unpublished opinion), was overruled by *Passarella v. Aspirus, Inc.*, 108 F.4th 1005 (7th Cir. 2024). The Wisconsin federal district court upheld a hospital's rejection of its employees' requests for religious exemptions from the COVID-19 vaccine, finding the requests were more rooted in safety concerns than religious convictions. But the Seventh Circuit disagreed. It held that under Title VII, "an employee seeks accommodation because of their religion when their request, by its terms, is plausibly based at least in part on some aspect of their religious belief or practice." 108 F.4th at 1007. That court recognized that an "employee may object to an employer's vaccine mandate on both religious and non-religious grounds." 108 F.4th at 1009. It explained:

> "But the fact that an accommodation request also invokes or, as here, even turns upon secular considerations does not negate its religious nature. To conclude otherwise fails to give effect to Congress's expansive definition of 'religion' and, even more, denies that a matter of personal conviction can root itself in both religious and non-religious reasons.
> "Recognize the path a contrary approach would take courts down. We would inevitably face the task of trying to draw lines between requests that are, for example,

'primarily' or 'mostly' or 'minimally' or 'tangentially'—pick your adverb—based on religion, with the latter categories ostensibly falling short of the Title VII threshold. Those kinds of distinctions would prove slippery in practice and arbitrary in their application.

"Legal peril also looms. This alternative approach would take us into territory the Supreme Court has admonished courts in no uncertain terms not to enter when discerning whether an individual harbors a religious belief or engages in religious practice. To be sure, the Court's decisions have not interpreted Title VII but, by close analogy, have considered what constitutes religious practice, observance, and belief under the Free Exercise Clause of the First Amendment and different federal statutes, including the Religious Freedom Restoration Act (RFRA) and the Religious Land Use and Institutionalized Persons Act (RLUIPA). At every turn the Court's watchword has been caution.

"Consider, for instance, the Court's admonition in *Thomas v. Review Board of the Indiana Employment Security Division* that judges are not to 'undertake to dissect religious beliefs . . . because [they] are not articulated with the clarity and precision that a more sophisticated person might employ.' 450 U.S. 707, 715, 101 S. Ct. 1425, 67 L. Ed. 2d 624 (1981). *Thomas* examined what counts as a 'religious belief or practice' under the Free Exercise Clause, but the Court's fundamental observation applies equally here: '[I]t is not within the judicial function and judicial competence to inquire whether the petitioner or his fellow worker more correctly perceived the commands of their common faith. Courts are not arbiters of scriptural interpretation.' *Id.* at 716, 101 S. Ct. 1425.

"Similar cautionary language resounds across many other cases. See, *e.g., Burwell v. Hobby Lobby Stores, Inc.*, 573 U.S. 682, 724, 134 S. Ct. 2751, 189 L. Ed. 2d 675 (2014) (emphasizing that 'federal courts have no business addressing [ ] whether the religious belief asserted in a [Religious Freedom Restoration Act] case is reasonable'); *Frazee v. Ill. Dep't of Emp. Sec.*, 489 U.S. 829, 833, 109 S. Ct. 1514, 103 L. Ed. 2d 914 (1989) (warning that the orthodoxy of a claimant's belief is 'irrelevant' under the Free Exercise Clause); *United States v. Ballard*, 322 U.S. 78, 86, 64 S. Ct. 882, 88 L. Ed. 1148 (1944) (observing that '[r]eligious experiences which are as real as life to some may be incomprehensible to others').

"A more precise takeaway from this body of precedent is that a 'religious' objection can sound in *both* religious and non-religious terms. The law in many contexts—whether it be the Free Exercise Clause or a federal statute like RFRA or

16

RLUIPA—does not require one or the other. See, *e.g., Welsh v. United States*, 398 U.S. 333, 342, 90 S. Ct. 1792, 26 L. Ed. 2d 308 (1970) (recognizing that an objection to the statutory military conscription requirement need only be 'based in part' upon religion to be considered 'religious'); *id.* (observing that a religious objection may be based 'to a substantial extent' upon other considerations, such as social, economic, philosophical, or public policy concerns); *United States v. Seeger*, 380 U.S. 163, 186, 85 S. Ct. 850, 13 L. Ed. 2d 733 (1965) (excluding draft exemptions based on a 'merely personal moral code'—one that is 'not only personal but which is the *sole* basis for the registrant's belief and is in *no way* related to a Supreme Being' (emphasis added)).

. . . .

"Perhaps above all else, then, one guidepost is clear:  '[c]ourts should not undertake to dissect religious beliefs . . . because [they] are not articulated with the clarity and precision that a more sophisticated person might employ.' *Thomas*, 450 U.S. at 715, 101 S. Ct. 1425. Nor should courts require employees to choose between the binary alternatives of a religious reason and non-religious reason to explain their perspective—here, their reason for seeking an exemption from mandatory COVID vaccination.

"Remember, too, what is being reviewed—not statutory language debated and refined by lawmakers or letters drafted by counsel, but instead an employee's explanation (whether typed or handwritten on a pre-printed form) for why they seek an exemption from COVID vaccination. Yes, the explanation must satisfy the standard we have articulated. But, no, courts should not expect, much less require, exemption requests to sound like they were written by someone with legal training. If an accommodation request can be read on its face as plausibly based in part on an aspect of the plaintiff-employee's religious belief or practice, that is enough to survive a motion to dismiss.

"No doubt there are limits. Religious accommodation requests rooting themselves entirely in safety considerations with no plain and express connection to religion will fall outside of the statute even at the pleading stage. And so, too, will downright 'bizarre' reasons having no plausible connection to religion. See *Thomas*, 450 U.S. at 716, 101 S. Ct. 1425 (emphasizing the same point)." 108 F.4th at 1010-11.

Here, too, Glean's concern that the vaccine may cause harm to her body must be read in context with her other statements, in which she explains why this concern is religious—that is, because she believes the Bible tells her that her body is holy. We agree

17

with the Seventh Circuit that we must avoid parsing out the bases for Glean's request—a necessarily subjective endeavor—especially when those bases are not mutually exclusive. We also find persuasive the Seventh Circuit's point about not reviewing Glean's request through an overly critical lens. Like the nurses in *Passarella*, the record does not suggest that Glean is a lawyer or that her statements were written by someone with legal training. She was a lay person answering questions on a preprinted electronic form in whatever space was provided by that form. Given the minimal requirements for requests under K.S.A. 2023 Supp. 44-663, we think the Seventh Circuit's plausibility test is a reasonable one which both gives meaning to the statute's language while not amplifying its requirements. We find Glean's request is plausibly based on an aspect of her sincerely held religious beliefs and therefore satisfies the statute.

In another case cited by St. Luke's, *Together Employees v. Mass General Brigham Inc.*, 573 F. Supp. 3d 412 (D. Mass. 2021), *aff'd* 32 F.4th 82 (1st Cir. 2022), the First Circuit discussed the difficulty of answering whether a plaintiff's assertions about the COVID-19 vaccine constituted religious beliefs—rather than philosophical, medical, or scientific beliefs, or personal fears or anxieties—that conflict with the vaccination policy. And the court noted "there are not always bright lines that would readily permit beliefs to be sorted into the categories of 'religious' and 'non-religious.'" 573 F. Supp. 3d at 440. Rather than finding that plaintiff's concerns were not religious, the court "assume[d], for the sake of argument, that plaintiffs can establish a *prima facie* case that a *bona fide* religious belief prevents them from taking the COVID-19 vaccine." 573 F. Supp. 3d at 441.

The remaining three federal cases cited by St. Luke's are even less relevant. For one, *Harris v. University of Massachusetts, Lowell*, 557 F. Supp. 3d 304 (D. Mass. 2021), did not involve whether an employee's objection to the COVID-19 vaccine was based on religion or a medical concern. In *Harris*, a college enforcing its COVID-19 vaccine mandate required the student, as "'[p]roof of a sincerely held religious belief'" to provide:

"'1. A signed statement from a religious official describing the religious tenet that precludes the taking of a vaccine and/or 2. A personally written statement describing the religious basis for [her] objection to taking this vaccine versus the other vaccines which [she] previously submitted evidence of having.'" 557 F. Supp. 3d at 311. The college also independently researched the student's claim of a religious objection based on her Catholic faith and concluded from its research that the COVID-19 vaccine would not violate tenants of that faith. 557 F. Supp. 3d at 311. The federal district court upheld the college's denial of the student's exemption because the student's "asserted religion did not prevent her from receiving the vaccine." 557 F. Supp. 3d at 314. Similarly, in *NM v. Hebrew Academy Long Beach*, 155 F. Supp. 3d 247 (E.D.N.Y. 2016), a parent's request for their child's exemption from school vaccinations based on their Jewish faith was denied because the court found "there is no tenet of the Orthodox Jewish religion that prohibits the practice of vaccinating." 155 F. Supp. 3d at 258-59. And in *Caviezel v. Great Neck Public Schools*, 701 F. Supp. 2d 414, 429 (E.D.N.Y. 2010), the court found the parents' professed religion did not oppose vaccinations, the parents inconsistently applied their objections to the vaccines by allowing their other children to be vaccinated, and the parents had expressed that vaccinations are not safe and may cause autism, which was not a religious basis for objecting to school vaccinations. 701 F. Supp. 2d at 429. We do not construe K.S.A. 2023 Supp. 44-663 as permitting similar scrutiny of an employee's exemption request like the courts in these cases did.

To conclude, we find the district court erred when it held KDOL misinterpreted K.S.A. 2023 Supp. 44-663. Because Glean's statements articulated a religious basis for her beliefs regarding the COVID-19 vaccine, and noting their context in the form of answering St. Luke's questions on St. Luke's preprinted form, we agree with KDOL that Glean satisfied the requirements under K.S.A. 2023 Supp. 44-663. The employee's burden to show a religious basis for their objection to the COVID-19 vaccine under the statute is not as substantial as the one imposed by the district court's interpretation. We

19

therefore reverse the district court's decision granting St. Luke's relief under K.S.A. 77-621(c)(4).

> *Under K.S.A. 77-621(d), there was substantial evidence to support KDOL's conclusion that St. Luke's violated K.S.A. 2023 Supp. 44-663.*

The district court also set aside KDOL's decision under K.S.A. 77-621(c)(7). The court determined KDOL's finding that Glean's request satisfied K.S.A. 2023 Supp. 44-663 was not supported by substantial evidence. KDOL argues the court erred because there was substantial evidence in the record to support KDOL's finding.

> *St. Luke's procedural arguments*

St. Luke's raises two procedural arguments for the first time on appeal: (1) KDOL failed to investigate Glean's complaint as required by K.S.A. 2023 Supp. 44-663; and (2) Glean's complaint was deficient because she did not provide a copy of her statement to KDOL in the original complaint. KDOL rightly points out St. Luke's did not preserve these arguments. See *In re N.E.*, 316 Kan. 391, 407, 516 P.3d 586 (2022) (issues not raised before the district court cannot be raised on appeal). Yet it also notes the issue on appeal is not what KDOL did or did not do, but rather whether the agency record provided substantial evidence to support KDOL's finding. As for Glean's failure to provide a copy of her statement to KDOL, KDOL points out it received a copy in St. Luke's response to KDOL. This is evidenced by KDOL quoting Glean's statement in its order.

Once a complaint is filed under K.S.A. 2023 Supp. 44-663, the Secretary of Labor must promptly investigate the complaint. K.S.A. 2023 Supp. 44-663(c)(2)(A): "At a minimum, the investigation shall determine whether: (i) The employer imposed a COVID-19 vaccine requirement; (ii) the employee submitted a written waiver request in

20

accordance with this section; and (iii) the employer committed any violation of this section." After the investigation, the secretary must issue an order with findings and conclusions about whether the employer violated the statute and provide the order to the employee and the employer. K.S.A. 2023 Supp. 44-663(c)(2)(B).

St. Luke's does not explain what more KDOL needed to investigate to determine whether Glean's statement, on its face, complied with K.S.A. 2023 Supp. 44-663. KDOL provided St. Luke's with a copy of Glean's complaint and an opportunity to respond. It also allowed Glean an opportunity to provide additional documentation in support of her complaint. KDOL told the parties that either of them could request a hearing and if no one did, then KDOL would issue a final order on the information they provided. Glean apparently provided no more information and neither party requested a hearing. In fact, St. Luke's stated in its response to KDOL that it felt the information it provided was sufficient for KDOL to issue a finding on Glean's complaint. We therefore see no error in how KDOL proceeded on Glean's complaint.

As for Glean's failure to provide a copy of her statement to KDOL with her complaint, we fail to see how this impacted KDOL's decision. KDOL had a copy of the statement before it issued its order, and St. Luke's does not reference other information on its preprinted electronic form that would have been relevant to KDOL's analysis or impacted its decision. We also note the record does not address Glean's ability to provide a copy of her statement, since it was submitted on St. Luke's preprinted electronic form. In other words, the record does not explain whether Glean even received a copy of her statement when she submitted it electronically on St. Luke's preprinted form. The district court did not mention this issue and it does not appear it impacted its decision, either. We find this point to be ultimately meaningless.

*The district court's de novo review of Glean's statement was improper.*

The district court found Glean's statement did not provide sufficient evidence to justify KDOL's conclusion that it satisfied K.S.A. 2023 Supp. 44-663. It found the words "'Bible,'" "'Christian,'" and "'my body is holy'" were the only evidence to support KDOL's findings. These words, according to the district court, are without any "demonstrative basis for a violation of any sincerely held religious beliefs without more." The court also repeated its concern that Glean offered but "inexplicably" failed to provide an explanation from her pastor, speculating that "[p]erhaps her pastor disagreed with her beliefs as being related to anything biblical, much less in violation with any particular religious tenets." The court concluded: "Without more, KDOL's factual conclusions are nothing more than speculation. And, in that regard, it fails to provide any *substantial* evidence to justify its conclusions."

KDOL contends the district court ignored the proper standard of review when conducting its analysis. K.S.A. 77-621(d) directs the court not to reweigh the evidence or engage in de novo review and requires the court to review all relevant evidence in the record. Rather than holistically reviewing the evidence to determine whether it supported KDOL's finding, KDOL says the court independently weighed Glean's statement by "plucking" out certain language, and by doing so, it stripped the words of their context and ignored their full message. And it contends the court's speculation about Glean's pastor's views are not based in the record and inappropriately question the veracity of Glean's beliefs.

St. Luke's essentially repeats the same arguments here that it made on the first issue, contending Glean's statement cannot support KDOL's finding because Glean articulated a concern with physical harm due to the vaccine rather than a religious belief. In sum, St. Luke's argues the district court correctly concluded that the record does not

22

contain any evidence reflecting that Glean's desire not to receive the COVID-19 vaccination was connected to her religious beliefs.

K.S.A. 77-621(d) mandates that a court cannot reweigh the evidence. The proper question is whether the evidence supporting the agency's factual findings is substantial when considered in light of all the evidence. *Hanson v. Kansas Corp. Comm'n*, 313 Kan. 752, 763, 490 P.3d 1216 (2021). And, when viewed in context, there is substantial evidence to support KDOL's findings.

As explained above, Glean submitted a written waiver request in accordance with the plain language of K.S.A. 2023 Supp. 44-663. Support for this finding in the agency record may be found in Glean's statements as displayed on St. Luke's preprinted electronic form. She articulated a religious reason for her exemption in her written statement, which is all the statute requires. When her statements are read in context, as we are required to do, we find a reasonable person might accept them as being sufficient to support a finding that St. Luke's violated K.S.A. 2023 Supp. 44-663. See *Kotnour v. City of Overland Park*, 43 Kan. App. 2d 833, 837, 233 P.3d 299 (2010). We therefore reverse the district court's decision granting St. Luke's relief under K.S.A. 77-621(c)(7).

*Like the district court, we decline to consider St. Luke's constitutional arguments.*

On appeal, St. Luke's repeats constitutional arguments the district court declined to address under the constitutional avoidance doctrine articulated in *Butler v. Shawnee Mission School District Board of Education*, 314 Kan. 553, 574, 502 P.3d 89 (2022) (citing *Chicago, K. & W. R. Co. v. Abilene Town-Site Co.*, 42 Kan. 97, 111, 21 P. 1112 [1889]). This doctrine is a prudential rule which takes on two forms:  (1) a canon of statutory construction expressing a preference for construing a statute to avoid constitutional doubts if there is another reasonable way to do so, and (2) a policy about how to adjudicate controversies in which a court refrains from deciding constitutional

23

questions unless it is necessary to do so. This doctrine is preferred in Kansas as our "'[a]ppellate courts generally avoid making unnecessary constitutional decisions.'" 314 Kan. at 574.

Like the district court, we decline to address St. Luke's constitutional concerns as unnecessary. Likewise, we decline to address these arguments because appellate courts are courts of review, so we are loath to consider issues for the first time on appeal.

*Did the district court err in determining proper venue?*

After St. Luke's filed its petition for review in Johnson County, KDOL moved to transfer venue to Shawnee County District Court under K.S.A. 60-611. The district court denied the motion. KDOL argues the district court erred because it contends venue was not proper in Johnson County since KDOL's order did not have an "effect" there. St. Luke's, however, correctly argues venue is proper in Johnson County because venue can be proper in more than one county and the statute and KDOL's order does have "effect" in Johnson County.

### Standard of review

Since the parties largely advanced legal arguments addressing the propriety of venue in Johnson County, we review the district court's decision de novo. Whether venue is proper under the KJRA is a question of law subject to unlimited review. *Bicknell v. Kansas Dept. of Revenue*, 315 Kan. 451, 462, 509 P.3d 1211 (2022).

### Venue over this matter is proper in Johnson County.

In civil cases, venue is a procedural matter—not a jurisdictional one. *Shutts, Executor v. Phillips Petroleum Co.*, 222 Kan. 527, 546, 567 P.2d 1292 (1977). "The KJRA's venue provision, K.S.A. 77-609(b), governs the proper venue for judicial review

24

of an agency order." *Bicknell*, 315 Kan. at 464. K.S.A. 77-609(b) states: "[V]enue is in the county in which the order or agency action is entered or is effective or the rule and regulation is promulgated." Under the plain meaning of the statute, the terms "entered" and "is effective" show "venue may properly lie in more than one county." 315 Kan. at 464.

Here, the parties disagree about the district court's interpretation of the statute. More specifically, they disagree that venue is proper in more than one county. St. Luke's contends venue may lie in more than one county—where KDOL issued its order in Shawnee County and where the action was effective in Johnson County. But KDOL says the order has no effect in Johnson County.

KDOL disagrees with the district court's interpretation of the word "effective" in K.S.A. 77-609(b), which if interpreted the way KDOL suggests would make venue only proper in Shawnee County.

St. Luke's argues the district court's interpretation of "effective" was correct as applied here, which makes venue also proper in Johnson County.

Both parties look at dictionary definitions of the word "effective." KDOL relies on a Webster's New World College Dictionary definition of "effective," while St. Luke's uses Black's Law Dictionary and Merriam-Webster's definitions. In sum, both parties' definitions agree that the order is effective where it produces a result.

KDOL argues St. Luke's violation in Johnson County is only a "theoretical" harm instead of an "actual" harm in Johnson County. The harm is theoretical because, according to KDOL, an order under K.S.A. 2023 Supp. 44-663(c) has no actual effect. And KDOL contends: "The order did one thing, and one thing only: it found St. Luke's violated K.S.A. 2023 Supp. 44-663." And KDOL points out: "The order causes no harm

25

on the employer." KDOL reaches this conclusion by contending that an issuance of an order does not immediately lead to punitive effects.

Yet the statute says the opposite of what KDOL argues. K.S.A. 2023 Supp. 44-663 informs KDOL how to handle complaints based on COVID-19 vaccination exemption requests. After an investigation, the Secretary of Labor issues an order with findings and conclusions about whether the employer violated this section. Then, the order is final for purposes of judicial review. Next the attorney general shall secure enforcement of the order by filing in the district court to impose civil penalties. For example, one such penalty could be a $50,000 fine per violation for an employer with 100 or more employees. Yet if the employer reinstates the terminated employee with back pay from the date the complaint was received by the secretary, the attorney general shall not file an action. K.S.A. 2023 Supp. 44-663(c)(2)(B)-(C), (c)(3)(A)-(C).

The statute does more than one thing. The order itself does not impose fines, but an order by the secretary is a necessary condition for any penalty to be imposed. If the employer violated the statute, then the employer must reinstate the employee with back pay. Though not explicitly phrased as a fine, reinstating an employee with back pay might cost an employer money. And if the employer violates the statute and does not reinstate the employee, the employer will face a harsher fine from the attorney general.

KDOL argues the outcome from the order does not cause actual harm. But this is not so because two things will occur: (1) The employer reinstates the employee with back pay or (2) the employer fails to reinstate and is fined by the attorney general.

Similarly, St. Luke's succinctly argues that K.S.A. 2023 Supp. 44-663 is clear. Once KDOL makes a finding of a violation, the effects will be felt because either (1) the employee is reinstated or (2) the violating employer faces a penalty. Either of these effects of the order will be felt in Johnson County. St. Luke's operates in Johnson County.

26

Glean lived in Johnson County. And Glean worked at St. Luke's Johnson County location. In short, KDOL's order will "have significant consequences on further operations by St. Luke's in Johnson County."

K.S.A. 77-609(b)'s language is plain and unambiguous, which means that the ordinary meaning of "effective" should control. The ordinary meaning of effective under K.S.A. 77-609(b) and applied to K.S.A. 2023 Supp. 44-663 means KDOL's order would be effective in Johnson County because St. Luke's Johnson County location is directly impacted by the agency decision.

*The district court did not misplace its application of* Bicknell.

"Where venue for a KJRA proceeding is proper in more than one county, the district court should give due consideration to the plaintiff's right to choose the place of the action." *Rhodenbaugh v. Kansas Employment Sec. Bd. of Review*, 52 Kan. App. 2d 621, 628, 372 P.3d 1252 (2016). A district court can also look at which forum serves the convenience of the parties and witnesses as well as the interests of justice. *Bicknell*, 315 Kan. at 464. The plaintiff's forum choice should not be disturbed—unless the balance between these interests strongly favors the defendant. 315 Kan. at 464; see also *Gonzales, Administrator v. Atchison, T. & S. F. Rly. Co.*, 189 Kan. 689, 693, 371 P.2d 193 (1962).

In *Bicknell*, the court assessed Bicknell's contacts with Kansas to determine whether Bicknell had tax consequences in Kansas even though Bicknell lived in Florida. The Board of Tax Appeals determined Bicknell was a Kansas resident for the tax assessment period. 315 Kan. at 455. Bicknell owned property in Pittsburg. As to whether venue was proper in Crawford County, the Kansas Supreme Court reasoned:

> "We conclude that the particular facts of this case establish that BOTA's order was 'effective' in Crawford County under K.S.A. 77-609(b). BOTA's order . . .

27

determined that [Bicknell] was a Kansas resident and that he needed to pay income taxes as a Kansas resident. That residency determination hinged on [Bicknell]'s former contacts with Crawford County. When an agency determines that an individual is a Kansas resident for income tax purposes based on his or her connections to or contact with a particular Kansas county, a sufficient nexus exists between the order and that county to render the order 'effective' there. Thus, no matter where [Bicknell] was domiciled in 2017, BOTA's determination that he was a Kansas resident based on his connections to or contact with Crawford County provided a basis for venue there." 315 Kan. at 465-66.

In sum, venue was proper based on the nexus between the county and the order because the order would be effective there. 315 Kan. at 466.

Here, the district court relied on *Bicknell*, 315 Kan. at 464, when it denied KDOL's motion to transfer for improper venue. The district court simply stated: "[T]here is no need to make a nuanced evaluation of what impact the order may have on petitioners because it is undisputed their hospital facilities are located in Johnson County and the employment relationship that resulted in the complaint stems from the same."

KDOL disagrees with the district court's reasoning. KDOL contends *Bicknell* was a tax case and Kansas residency was a determining factor to decide whether to impose income tax obligations. KDOL explains: "Bicknell's former contacts with Crawford County was the only thing tying Bicknell to Kansas and were necessary for jurisdiction." KDOL distinguishes *Bicknell* by pointing out that KDOL's order does not impose any burden on St. Luke's because it has no effect.

KDOL quickly discusses two other cases that are distinguished in *Bicknell*, *Karns v. Kansas Bd. of Agriculture*, 22 Kan. App. 2d 739, 742, 923 P.2d 78 (1996), and *Rhodenbaugh*, 52 Kan. App. 2d at 628. It argues these cases do not apply. But KDOL misses the point about the use of these cases in *Bicknell*. As the Kansas Supreme Court explains:

28

"[I]n *Karns v. Kansas Bd. of Agriculture*, 22 Kan. App. 2d 739, 742, 923 P.2d 78 (1996), the Court of Appeals held that an agency order denying a crop duster's business license and revoking his commercial applicator certification would be effective in any county in which the crop duster had been operating. And in *Rhodenbaugh*, the Court of Appeals held that an agency order denying unemployment benefits to a nurse would be effective in the county where the nurse lived and would have received her benefits. 52 Kan. App. 2d at 628. The Court of Appeals found that 'the facts the Bicknells rely on are far removed from those in [*Karns* and *Rhodenbaugh*].' *Bicknell* [*v. Kansas Dept. of Revenue*], 59 Kan. App. 2d [500,] 529[, 485 P.3d 679 (2021)].

"We agree that the facts here differ from those in *Karns* and *Rhodenbaugh*, but we do not find that difference to be dispositive. While both *Karns* and *Rhodenbaugh* explain how to determine whether venue lies in a particular county under K.S.A. 77-609(b), neither case definitively establishes when an order may be considered 'effective' under the statute." *Bicknell*, 315 Kan. at 465.

KDOL argues these cases do not apply here either because the KDOL order had no effect on St. Luke's.

While KDOL correctly identifies that *Bicknell*'s underlying issues concern taxes, the district court did not apply the tax principles from *Bicknell*. The district court focused on the language pertinent to deciding a venue question—not a tax question. The district court noted KDOL's order's effect on St. Luke's is "even more apparent than the tax order in *Bicknell* where the petitioner argued it would impose burdens and risks on his interests in Crawford County even though he lived in Florida. This tangential effect was apparently enough for the supreme court to conclude the order was 'effective' there." Through reasoning by analogy the district court reasonably inferred that St. Luke's business operations in Johnson County implicate similar contacts to a property owner owning property in a county.

St. Luke's agrees with the district court and points out KDOL's order impacts how St. Luke's might enforce its COVID-19 Vaccination Policy at its Johnson County hospital. The order would have an effect on St. Luke's in Johnson County because it impacts St. Luke's business operations in Johnson County.

Venue might be proper in more than one location, and here it is proper in Johnson County. We give due consideration to St. Luke's right to choose where to challenge the order and KDOL fails to persuade us that Johnson County is improper for the purposes of venue. As the district court reasonably concluded, KDOL's order would have an effect on St. Luke's in Johnson County because the order would influence St. Luke's business operations in Johnson County.

Thus, we affirm the district court's order denying KDOL's motion to transfer venue.

Affirmed in part and reversed in part.